Marina A. Torres (SBN 259576)
mtorres@willkie.com
Logan M. Elliott (SBN 268105)
lelliott@willkie.com
WILLKIE FARR & GALLAGHER LLP
2029 Century Park East, Suite 2900
Los Angeles, California 90067
Telephone:  (310) 855-3000
Facsimile:  (310) 855-3099

Michael J. Gottlieb (*Pro hac vice forthcoming*)
mgottlieb@willkie.com
WILLKIE FARR & GALLAGHER LLP
1875 K St N.W.
Washington, D.C. 20006
Telephone: (202) 303-1000
Facsimile:  (202) 303-2000

Attorneys for Petitioners Patrick McKillen and Hume Street Management
Consultants Limited

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE APPLICATION OF PATRICK MCKILLEN AND HUME STREET MANAGEMENT CONSULTANTS LIMITED<br><br>Petitioners, | CASE NO.:  2:24-mc-62<br><br>***EX PARTE* APPLICATION FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782 TO CONDUCT DISCOVERY FOR USE IN A FOREIGN PROCEEDING FROM SHEIKH HAMAD BIN JASSIM** |

Patrick McKillen ("McKillen") and Hume Street Management Consultants Limited ("HSMC") (together, the "Petitioners"), by and through their counsel, Willkie Farr & Gallagher LLP, hereby submit this Application and Memorandum of Law in support of their petition to this Court pursuant to 28 U.S.C. § 1782. Petitioners seek an Order granting them leave to serve targeted discovery, in compliance with all relevant provisions of Federal Rule of Civil Procedure ("Rule") 45, and in the same form as the subpoenas attached hereto as Exhibits 1 and 2, upon Sheikh Hamad bin Jassim bin Jaber bin Mohammed bin Thani Al Thani ("Sheikh Hamad bin Jassim"). These subpoenas seek targeted documents and testimony for use in connection with proceedings in front of the Paris Commercial Court against Sheikh Hamad bin Jassim's company, Constellation Paris SAS ("Constellation Paris"), including pre-litigation discovery proceedings which are ongoing. Petitioners request that the Court grant them leave *ex parte.* This is the typical procedure for Section 1782 applications, and Sheikh Hamad bin Jassim, as respondent to the Application, retains the ability to respond to the subpoenas attached to this Application pursuant to the governing discovery rules, and/or to object pursuant to Rule 45(d). Because of these subsequent notice requirements,

///

///

///

1   courts have found waivers of the Central District's *ex parte* notice requirements to

2   be appropriate in the context of Section 1782 applications; Petitioners request such

3   a waiver here.[1]

4

5   DATED: May 6, 2024

6                           WILLKIE FARR & GALLAGHER LLP

7

8                           By:  /s/ Logan M. Elliott
                                 Logan M. Elliott

9                                Marina A. Torres

10                               Michael J. Gottlieb (*Pro hac vice forthcoming*)
                                 *Attorneys for Petitioners*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25   _____

26   [1] *See, e.g.*, *In re Murchinson Ltd.*, No. 2:23-MC-00191-SB-PD, 2024 WL 489175, at *5 (C.D. Cal. Jan. 26,
     2024), *report and recommendation adopted*, No. 2:23-MC-00191-SB-PD, 2024 WL 756297 (C.D. Cal.
     Feb. 21, 2024) ("It is neither uncommon nor improper for district courts to grant applications made pursuant

27   to § 1782 ex parte. The Respondent's due process rights are not violated because he can later challenge any
     discovery request by moving to quash pursuant to Federal Rule of Civil Procedure 45([d])(3). . . . The Court
     therefore finds waiver of the Central District's ex parte notice requirements is appropriate in this matter."

28   (internal quotation marks and citation omitted)).

# TABLE OF CONTENTS

**Page(s)**

JURISDICTION AND VENUE ................................................................1

I.     PRELIMINARY STATEMENT ..................................................1

II.    STATEMENT OF FACTS.........................................................3

III.   ARGUMENT ..................................................................................8

    A. Petitioners' Application Meets the Threshold
       Requirements of Section 1782 ...........................................10

    B. The Discretionary *Intel* Factors Weigh in Favor of
       Granting Petitioners' Application ......................................12

IV.   CONCLUSION ...............................................................................18

*EX PARTE* APPLICATION FOR DISCOVERY PURSUANT TO 28 U.S.C. § 1782

## <u>TABLE OF AUTHORITIES</u>

**Cases**            **Page(s)**

*In re Accent Delight Int'l Ltd.*,
   791 F. App'x 247 (2d Cir. 2019) ........................................................16

*Adv. Micro Devices, Inc. v. Intel Corp.*,
   292 F.3d 664 (9th Cir. 2002) .............................................12, 13, 16

*Akebia Therapeutics, Inc. v. FibroGen, Inc.*,
   793 F.3d 1108 (9th Cir. 2015) .............................................................9

*In re al Ibrahim*,
   No. 2:22-mc-00192-DSF-MAA, 2022 WL 18674434 (C.D. Cal.
   Oct. 31, 2022) ...................................................................................12

*In re al Ibrahim*,
   No. 2:22-mc-192-DSF-MAA, 2022 WL 16973297 (C.D. Cal. Nov.
   16, 2022) .......................................................................................8, 14

*In re Align Tech., Inc.*,
   No. 2:22-mc-00236-SB-MAA, 2022 WL 18460717 (C.D. Cal.
   Dec. 15, 2022)................................................................................*passim*

*In re Ex Parte Application of Ambercroft Trading Ltd.*,
   No. 18-MC-80074-KAW, 2018 WL 2867744 (N.D. Cal. June 11,
   2018) ..................................................................................................12

*In re: Application of Joint Stock Co. Raiffeinsenbank*,
   No. 16-MC-80203-MEJ, 2016 WL 6474224 (N.D. Cal. Nov. 2,
   2016) ..................................................................................................16

*In re Ex Parte Application of Mentor Graphics Corp.*,
   No. 16-mc-80037-HRL, 2017 WL 55875 (N.D. Cal. Jan. 4, 2017).......14, 15, 16

*In re Consellior SAS, Kerfraval, Assn. De Documentation Pour
   L'industrie Nationale*,
   No. 13 MC 34, 2013 WL 5517925 (D. Conn. Oct. 2, 2013)...........................15

*In re Hedrick H. Ltd.*,
   No. MC2000048RGKDFM, 2020 WL 8457437 (C.D. Cal. May
   29, 2020) ...........................................................................................11

*Hume St. Mgmt. Consultants Ltd. v. Sheikh Hamad*
  *bin Khalifa bin Hamad bin Abdullah bin Jassim bin Mohammed Al*
  *Thani*, 22-SMC-cv-02646 (L.A. Super. Ct. Apr. 28, 2023) ...............................10

*Illumina Cambridge Ltd. v. Complete Genomics, Inc.*,
  No. 19-MC-80215-WHO (TSH), 2020 WL 820327 (N.D. Cal. Feb.
  19, 2020) ....................................................................................................15

*Intel Corp. v. Adv. Micro Devices, Inc.*,
  542 U.S. 241 (2004)......................................................................................*passim*

*Leutheusser-Schnarrenberger v. Kogan*,
  No. 18-MC-80171-JSC, 2018 WL 5095133 (N.D. Cal. Oct. 17,
  2018) ..........................................................................................................10

*London v. Does 1-4*,
  279 Fed. App'x 513 (9th Cir. 2008) ................................................................15

*Matter of Lufthansa Technick AG*,
  No. C17-1453-JCC, 2019 WL 280000 (W.D. Wash. Jan. 22, 2019)................15

*In re LVL-USA LLC*,
  No. 220MC00018TLPCGC, 2020 WL 6051310 (W.D. Tenn. Oct.
  13, 2020) ....................................................................................................15

*In re MacDonell*,
  No. 2:17-MC-00189 TLN AC, 2017 WL 6448050 (E.D. Cal. Dec.
  15, 2017) ....................................................................................................15

*In re MacDonell*,
  No. 2:20-CV-1332 KJM DB, 2020 WL 3961958 (E.D. Cal. July
  13, 2020) ....................................................................................................14

*Palantir Techs., Inc. v. Abramowitz*,
  415 F. Supp. 3d 907 (N.D. Cal. 2019)..............................................................12

*In re Premises Located at 840 140th Ave. NE, Bellevue, Wash.*,
  634 F.3d 557 (9th Cir. 2011) ...........................................................................12

*Ex parte Rigby*,
  No. 13CV0271-MMA MDD, 2013 WL 622235 (S.D. Cal. Feb. 19,
  2013) ..........................................................................................................15

*In re Vahabzadeh*,
   No. 20-MC-80116-DMR, 2020 WL 5095131 (N.D. Cal. Aug. 28,
   2020) ...........................................................................................................15, 17

*In re Vahabzadeh*,
   No. 20-mc-80116-DMR, 2020 WL 7227205 (N.D. Cal. Dec. 8,
   2020) ...........................................................................................................15, 16

**Statutes**

28 U.S.C. § 1331 ...........................................................................................................1

28 U.S.C. § 1782 ...................................................................................................*passim*

**Other Authorities**

Aina J. Khan, *'The man who bought London': Qatar billionaire
   behind Prince Charles scandal,* THE GUARDIAN (June 26, 2022),
   https://www.theguardian.com/world/2022/jun/26/the-man-who-
   bought-london-qatar-billionaire-behind-prince-charles-scandal ........................6

Emma Yeomans & Andrew Norfolk, *Doha Bank kept funds for Isis
   judge, court told,* THE TIMES (Mar. 3, 2022),
   https://www.thetimes.co.uk/article/doha-bank-kept-funds-for-isis-
   judge-court-told-6brgchcdg ...................................................................................7

Josh Mone, *What Happened in Qatar?: Examining the Corruption
   Scandal Surrounding the 2022 World Cup*, MINN. J. OF INT'L L.
   BLOG (Mar. 17, 2023), https://minnjil.org/2023/03/17/what-
   happened-in-qatar-examining-the-corruption-scandal-surrounding-
   the-2022-world-cup/#_ftn1 ...................................................................................6

*Maybourne Hotel Group to Open Hotel on Côte d'Azur This Summer*,
   LUXURY TRAVEL ADVISOR (May 19, 2021),
   https://www.luxurytraveladvisor.com/hotels/maybourne-hotel-
   group-to-open-hotel-cote-d-azur-summer ............................................................3

*Montage Beverly Hills has been acquired by London based luxury
   hotel company Maybourne Hotel Group, operators of Claridge's,
   The Connaught and The Berkeley*, HOSPITALITY NET (Dec. 23,
   2019), https://www.hospitalitynet.org/news/4096356.html ..................................3

*Muslim Brotherhood in Qatar*, COUNTER EXTREMISM PROJECT,
   https://www.counterextremism.com/content/muslim-brotherhood-
   qatar..........................................................................................................................6

Oscar Williams-Grut, *Barclays bankers worried about 'dodgy'
    payments to Qatari Prime Minister, court hears,* YAHOO FINANCE
    (Jan. 25, 2019), https://uk.finance.yahoo.com/news/barclays-
    bankers-worried-dodgy-payments-qatari-prime-minister-court-
    hears-164504360.html; ........................................................................ 6

*Qatar: Extremism and Terrorism,* COUNTER EXTREMISM PROJECT,
    https://www.counterextremism.com/countries/qatar-extremism-
    and-terrorism/report ..................................................................... 6, 7

Randeep Ramesh & Rori Donaghy, *Ex-PM of Qatar to invoke
    diplomatic immunity in UK torture case,* THE GUARDIAN (Oct. 18,
    2015), https://www.theguardian.com/world/2015/oct/18/former-
    qatari-pm-sheikh-hamad-bin-jassim-bin-jaber-al-thani-diplomatic-
    immunity ...................................................................................... 6

Rob Davies & Joseph Smith, '*They are buying something': the cash,
    gifts and arms cementing the Qatari-UK relationship,* THE
    GUARDIAN (Nov. 17, 2022),
    https://www.theguardian.com/world/2022/nov/17/they-are-buying-
    something-the-cash-gifts-and-arms-cementing-the-qatari-uk-
    relationship................................................................................... 6

*EX PARTE* APPLICATION FOR DISCOVERY PURSUANT TO 28 U.S.C. § 1782

1

## JURISDICTION AND VENUE

This Court has subject matter jurisdiction over this Application pursuant to 28 U.S.C. § 1331 on the basis that the Application is being made pursuant to 28 U.S.C. § 1782. Venue in the Central District of California is appropriate pursuant to 28 U.S.C. § 1782 because the discovery is being sought from an individual residing in the Central District of California.

## I.   PRELIMINARY STATEMENT

Section 1782 is a mechanism under United States law by which litigants in foreign proceedings can seek the aid of United States courts in obtaining discovery in support of such proceedings. Petitioners seek to do just that. Petitioner HSMC is preparing to bring suit on the merits in front of the Paris Commercial Court seeking remuneration owed by Constellation Paris related to the development of a luxury hotel at 231, Boulevard Saint-Germain in Paris, France (the "French Merits Proceeding"). To that end, HSMC is currently engaged in pre-litigation proceedings in front of the Paris Commercial Court seeking discovery to support its claims (the "French Discovery Proceedings" and together with the French Merits Proceeding, the "French Proceedings"). Sheikh Hamad bin Jassim is not currently a party to the proceedings, yet, upon information and belief, possesses information critical to resolving Petitioner's claims before the French court. As the requested documents and testimony are not reachable by a French court, Petitioners bring an Application in front of this Court for aid pursuant to 28 U.S.C. § 1782.

More specifically, 28 U.S.C. § 1782 authorizes a federal district court to order discovery of documents and testimony for use in a foreign proceeding from any person who resides or is found in the court's district.   28 U.S.C. § 1782(a). To be successful, a Section 1782 application must meet three statutory requirements: (1) the person from whom discovery is sought must "reside[]" or be "found" in the district; (2) the applicant must be an "interested person" in the foreign proceeding; and (3) the discovery must be for use in a "foreign or international tribunal." *Intel*

*Corp. v. Adv. Micro Devices, Inc.*, 542 U.S. 241, 246 (2004) (internal quotation marks omitted); *see also In re Align Tech., Inc.*, No. 2:22-MC-00236-SB-MAA, 2022 WL 18460717, at *3 (C.D. Cal. Dec. 15, 2022), *report and recommendation adopted*, No. 2:22-MC-00236-SB-MAA, 2023 WL 405316 (C.D. Cal. Jan. 24, 2023).   Because each of these statutory requirements is met here, Petitioners' Application should be granted.

First, Sheikh Hamad bin Jassim resides in this district and maintains a residence in Los Angeles, California.  Second, Petitioner HSMC is an "interested person" because, as plaintiff, it is, and will be, a party to the French Discovery and Merits Proceedings, and its counsel in France intends to use the documents and testimony obtained from Sheikh Hamad bin Jassim in the French Merits Proceeding. Petitioner McKillen is also an "interested person," as he wholly owns HSMC.

Third, upon information and belief, Sheikh Hamad bin Jassim possesses documents and information that Petitioners will use in the French Merits Proceeding. Petitioners believe that these documents and testimony will demonstrate Sheikh Hamad bin Jassim's personal involvement in the facts in dispute; bad faith on the part of Sheikh Hamad bin Jassim and Constellation Paris which, under French law, enables plaintiffs to receive increased damages; and proof of a contractual relationship reached between HSMC and Constellation Paris and the satisfaction of Sheikh Hamad bin Jassim and Constellation Paris with HSMC's work, such that HSMC is legally entitled to the requested remuneration.

As a final matter, the four discretionary *Intel* factors analyzed by courts in reviewing a Section 1782 application also support granting Petitioners' Application. *See Intel*, 542 U.S. at 264–65.  Indeed, (i) Sheikh Hamad bin Jassim is not currently a party to the French Proceedings, and the French court is unable to order him to produce the evidence sought; (ii) French courts are typically receptive to judicial cooperation with the United States, and Petitioners have no reason to believe that the French court would decline to consider the evidence sought; (iii) Petitioners are not

attempting to circumvent a foreign proof-gathering restriction; and (iv) Petitioners' Application is not unduly intrusive or burdensome because the discovery requested is narrowly tailored to topics critical to the resolution of the French Merits Proceeding.

## II.   STATEMENT OF FACTS

In 2004, Petitioner Patrick McKillen and a group of investors acquired three luxury hotels in London and began to operate them under the Maybourne Hotel Group brand.  Apelbaum Decl. ¶ 10.  In 2015, McKillen agreed to sell his share in Coroin Limited ("Coroin"), the parent company of the subsidiaries holding each hotel, to Séléné SàRL, a company owned by Respondent Sheikh Hamad bin Jassim (the "2015 Agreement").  *Id.*

Over the few years following the acquisition, McKillen and HSMC continued to manage and renovate a number of existing Maybourne hotels.  *Id.*  And when Sheikh Hamad bin Jassim and his business partner Sheikh Hamad bin Khalifa bin Hamad bin Abdullah bin Jassim bin Mohammed Al Thani ("Sheikh Hamad bin Khalifa") sought to expand the Maybourne Hotel Group internationally, they sought the services of McKillen and HSMC to assist with related management and redevelopment efforts.  *Id.* at ¶ 11.  To that end, they acquired two hotels to be operated under the Maybourne brand, one in Roquebrune-Cap-Martin on the Côte d'Azur (the "Maybourne Riviera")[2] and another in Los Angeles (the "Maybourne Beverly Hills").[3]  Around the same time, Sheikh Hamad bin Jassim sought to open a third hotel in Paris and became interested in an opportunity to develop a hotel in a portion of the historical seat of the French Ministry of Armed Forces, located at 231,

---

[2] *See Maybourne Hotel Group to Open Hotel on Côte d'Azur This Summer*, LUXURY TRAVEL ADVISOR (May 19, 2021), https://www.luxurytraveladvisor.com/hotels/maybourne-hotel-group-to-open-hotel-cote-d-azur-summer.

[3] *See Montage Beverly Hills has been acquired by London based luxury hotel company Maybourne Hotel Group, operators of Claridge's, The Connaught and The Berkeley*, HOSPITALITY NET (Dec. 23, 2019), https://www.hospitalitynet.org/news/4096356.html.

Boulevard Saint-Germain in Paris, France (the "Saint-Germain").  Apelbaum Decl. ¶ 11.

In September 2018, Sheikh Hamad bin Jassim reached out to McKillen to discuss his interest in acquiring the Saint-Germain and get McKillen's advice on the acquisition and transformation of the site into a luxury hotel (the "Saint-Germain Project").  *Id.* at ¶ 12.  After visiting the site shortly thereafter, McKillen confirmed the investment's value, and Sheikh Hamad bin Jassim purchased the Saint-Germain in 2019 through a company created specifically for the transaction, Constellation Paris, chaired by Fady Bakhos, a personal advisor to Sheikh Hamad bin Jassim.  *Id.* at ¶¶ 12–13.

Following the purchase and given HSMC's previous successes transforming luxury hotels, Sheikh Hamad bin Jassim approached McKillen to ensure that HSMC would serve as project manager for the Saint-Germain Project.  *Id.* at ¶ 14.  McKillen accepted.  *Id.*  Pursuant to this agreement, HSMC was engaged to oversee all aspects of the new hotel's development.  *Id.*  A primary contractor, Gleeds Project & Construction Management Services ("Gleeds"), was then retained along with Vinci Immobilier as real estate developer.  *Id.*

The Saint-Germain Project was a massive undertaking.  Plans for the hotel included the construction of almost 100 rooms, a wellness center, multiple swimming pools, an anti-aging clinic, luxury boutiques, lounges, and a restaurant and bar.  *Id.* at ¶ 15.  HSMC developed the plan for the creation of the new hotel, supervised the project on-site, and provided input and guidance at each stage of development.  *Id.*  Further, HSMC had clear decision-making authority, with Sheikh Hamad bin Jassim indicating that certain final decisions with respect to the project belonged to McKillen and HSMC.  *Id.*

Constellation Paris and Sheikh Hamad bin Jassim undoubtedly considered HSMC to be essential to the Saint-Germain Project.  *Id.* at ¶ 16.  Sheikh Hamad bin Jassim instructed Gleeds and Vinci Immobilier to develop the hotel under McKillen

and HSMC's guidance and provided that the housing plan was to be developed by McKillen and HSMC. *Id.* Constellation Paris and Sheikh Hamad bin Jassim would even postpone meetings related to the Saint-Germain Project if McKillen was not able to attend. *Id.*

Sheikh Hamad bin Jassim was also personally involved in the Saint-Germain Project. *Id.* at ¶ 21. He attended and participated in numerous meetings and regularly issued express instructions concerning the development of the site. *Id.*

HSMC's service as project manager culminated dramatically around the time of the Saint Germain Project's presentation to the public on September 14, 2021. *Id.* at ¶ 17. Two days later, on September 16, 2021, HSMC sent Bakhos a letter concerning a draft remuneration agreement for HSMC's services on the project. *Id.* HSMC's remuneration offer to Constellation Paris was quite generous in comparison to HSMC's agreements with companies owned by Sheikh Hamad bin Jassim and Sheikh Hamad bin Khalifa on past luxury hotel projects, extending significant savings to Constellation Paris. *Id.*

But on September 26, 2021, Bakhos sent an email to Liam Cunningham, McKillen's associate, refusing to compensate HSMC for project management services performed. *Id.* at ¶ 18. Despite Gleeds seeking HSMC's input on a number of points via email a few days earlier, Bakhos stated that "there is no project management work [in relation to the Saint-Germain Project] other than what is being undertaken by Gleeds." *Id.* Astonished by bald misrepresentations in Constellation Paris's response, it was clear to HSMC that no further discussion could take place. *Id.* To this day, HSMC has received no compensation for services performed in relation to the Saint-Germain Project, representing tens of millions of euros of work. *Id.* at ¶ 19.

There has been no indication that Constellation Paris or Sheikh Hamad bin Jassim questioned the quality of HSMC's work. *Id.* And, what is more, *multiple* different companies beneficially owned by Sheikh Hamad bin Jassim or Sheikh

Hamad bin Khalifa have refused to compensate HSMC for services rendered with respect to three luxury hotel projects: the Maybourne Beverly Hills, the Maybourne Riviera, and the Saint-Germain Project.  *Id*. at ¶ 20.  These tactics are in line with public reporting, which have connected Sheikh Hamad bin Jassim[4] and Sheikh

---

[4]   *See, e.g.*, *Muslim Brotherhood in Qatar*, COUNTER EXTREMISM PROJECT, https://www.counterextremism.com/content/muslim-brotherhood-qatar (last visited Mar. 12, 2024) ("During [former Egyptian President] Morsi's presidency, funds as high as $850,000 were reportedly secretly transferred to the [Muslim] Brotherhood from Qatar's former Prime Minister Sheikh Hamad bin Jassim bin Jaber Al Thani.  A document dated March 28, 2013, details the allocation of funds from Hamad bin Jassim to a 'long list' of Egyptian Muslim Brotherhood leaders."); *Qatar: Extremism and Terrorism,* COUNTER EXTREMISM PROJECT at 8, https://www.counterextremism.com/countries/qatar-extremism-and-terrorism/report (last visited Mar. 12, 2024) ("In June 2021, a group [sic] nine Syrian refugees launched a second lawsuit in the United Kingdom's High Court, alleging a group of Qatari officials and businessmen, two banks, and multiple charities conspired with the Qatari government, in coordination with the Muslim Brotherhood, to launder money for al-Nusra Front in Syria . . . . The complaint levied charges against multiple Qatari nationals [including] former Qatari prime minister Hamad bin Jassim al-Thani . . . ."); Josh Mone, *What Happened in Qatar?: Examining the Corruption Scandal Surrounding the 2022 World Cup*, MINN. J. OF INT'L L. BLOG (Mar. 17, 2023), https://minnjil.org/2023/03/17/what-happened-in-qatar-examining-the-corruption-scandal-surrounding-the-2022-world-cup/#_ftn1 ("In 2010, Sheikh Hamad bin Jassim al-Thani . . . traveled to France to pitch the almost fantastical idea of hosting the world's largest sporting event . . . . In the nearly thirteen years since then, [FIFA] and Qatari officials have faced countless scandals and accusations relating to the 2022 World Cup."); Rob Davies & Joseph Smith, '*They are buying something': the cash, gifts and arms cementing the Qatari-UK relationship*, THE GUARDIAN (Nov. 17, 2022), https://www.theguardian.com/world/2022/nov/17/they-are-buying-something-the-cash-gifts-and-arms-cementing-the-qatari-uk-relationship ("Qatar's fearsome financial muscle, flexed via the QIA as well its ruling elite's personal wealth, has been used not just to buy up prestige assets in London . . . but also to purchase military hardware . . . . In 1996, BAE Systems and Qatar signed a £500m arms contract, brokered by then-Tory defence minister Michael Portillo, that included the supply of Piranha armoured vehicles. It later emerged that the deal involved the transfer of £7m into two Jersey trusts of which Hamad bin Jassim Al Thani, then foreign minister, was a beneficiary."); Aina J. Khan, *'The man who bought London': Qatar billionaire behind Prince Charles scandal*, THE GUARDIAN (June 26, 2022), https://www.theguardian.com/world/2022/jun/26/the-man-who-bought-london-qatar-billionaire-behind-prince-charles-scandal ("Sheikh Hamad bin Jassim bin Jaber al-Thani . . .  has often garnered attention because of his wealth and is currently in the headlines over alleged cash donations to Prince Charles."); *id.* ("In 2021, al-Thani was also named in the Pandora Papers, which revealed he had used offshore companies in tax havens including the British Virgin Islands and the Bahamas."); *id.* ("[I]t was revealed that al-Thani used offshore companies to manage his superyacht moored in Mallorca, Al Mirqab, which is estimated to be worth $300m."); Oscar Williams-Grut, *Barclays bankers worried about 'dodgy' payments to Qatari Prime Minister, court hears*, YAHOO FINANCE (Jan. 25, 2019), https://uk.finance.yahoo.com/news/barclays-bankers-worried-dodgy-payments-qatari-prime-minister-court-hears-164504360.html; Randeep Ramesh & Rori Donaghy, *Ex-PM of Qatar to invoke diplomatic immunity in UK torture case*, THE GUARDIAN (Oct. 18, 2015), https://www.theguardian.com/world/2015/oct/18/former-qatari-pm-sheikh-hamad-bin-jassim-bin-jaber-al-thani-diplomatic-immunity ("Qatari agents acting on behalf of Sheikh Hamad bin Jassim bin Jaber al-Thani alleged to have falsely imprisoned British national Fawaz al-Attiya in Doha").

Hamad bin Khalifa[5] to improper dealings in a variety of contexts.

What is more, Sheikh Hamad bin Jassim was personally involved not only in the regular goings-on at the Saint-Germain site but also, upon information and belief, in the refusal to compensate HSMC for project management services.  This is evident from his frequent participation in meetings and issuance of instructions with respect to the Saint-Germain Project, the refusal of payment to HSMC by Sheikh Hamad bin Jassim's personal advisor, Bakhos, and the multiple refusals to pay HSMC by companies owned by Sheikh Hamad bin Jassim and/or his close associates. Apelbaum Decl. ¶¶ 20–22.

In advance of the imminent French Merits Proceeding on these outstanding debts, HSMC has been engaged in pre-litigation discovery proceedings in front of the Paris Commercial Court.  *Id*. at ¶ 23.  In June 2023, HSMC sought pre-litigation discovery concerning this dispute from Constellation Paris, Vinci Immobilier Promotion, and Sheikh Hamad bin Jassim.  *Id*.  But because of strict discovery rules requiring the need to allege the location of documents before being able to obtain them, HSMC has been unsuccessful in obtaining pre-litigation discovery from Sheikh Hamad bin Jassim's Paris office.  *Id*.  No other means of obtaining such

---

[5]  *See, e.g.*, *Muslim Brotherhood in Qatar*, COUNTER EXTREMISM PROJECT, https://www.counterextremism.com/content/muslim-brotherhood-qatar (last visited Mar. 12, 2024) ("In 2012, Qatari Emir Hamad bin Khalifa al-Thani became the first head of state to visit Gaza, pledging $400 million to Hamas."); *Qatar: Extremism and Terrorism,* COUNTER EXTREMISM PROJECT at 9, https://www.counterextremism.com/countries/qatar-extremism-and-terrorism/report (last visited Mar. 12, 2024) ("Qatar has provided financial support to Iran in the form of ransom payments for Iranian hostages in Syria . . . . In May 2021, former Iranian President Mahmoud Ahmadinejad acknowledged the hostages were [Islamic Revolutionary Guard Corps ("IRGC")] members after Iran initially insisted they were civilians. Ahmadinejad said he had asked then Qatari Emir Sheikh Hamad Bin Khalifa Al Thani to pay the ransom and Iran would reimburse him in the future. [Sheikh Hamad Bin Khalifa] paid the ransom, and the prisoners were released. Ahmadinejad says the emir refused to accept reimbursement[.]"); Emma Yeomans & Andrew Norfolk, *Doha Bank kept funds for Isis judge, court told*, THE TIMES (Mar. 3, 2022), https://www.thetimes.co.uk/article/doha-bank-kept-funds-for-isis-judge-court-told-6brgchcdg ("Doha Bank is alleged to have passed money [in the form of a grant issued at the instruction of Sheikh Hamad bin Khalifa] to Fadel al-Saleem, a sharia judge for Isis in Syria. James Foley, an American journalist who was beheaded in 2014, is one of those against whom he is said to have issued a death sentence.  The claim was made at the High Court, where four refugees from the Syrian civil war are seeking damages for torture and acts of terrorism that they allegedly suffered at the hands of an al-Qaeda affiliate, Nusra Front.").

*EX PARTE* APPLICATION FOR DISCOVERY PURSUANT TO 28 U.S.C. § 1782

discovery against Sheikh Hamad bin Jassim is available in the French Proceedings. *Id.* at ¶¶ 33, 36; Mehtiyeva Decl. ¶¶ 11–15.

As a result, Petitioners here seek documents and testimony for use in the French Merits Proceeding that are otherwise unavailable to Petitioners.  Apelbaum Decl. ¶¶ 27–29, 33, 36.  Specifically, Petitioners seek documents and information from a party involved in the events underlying the French Proceedings who is not currently a party to those proceedings.  *Id.* at ¶¶ 24, 32.  Petitioners believe those documents will demonstrate Sheikh Hamad bin Jassim's personal involvement in the commercial relationship with HSMC in connection with the Saint-Germain Project as de facto manager of Constellation Paris; proof of bad faith on the part of Constellation Paris and Sheikh Hamad bin Jassim, which, under French law, enables plaintiffs to receive increased damages; and that an agreement for remuneration was reached between HSMC and Constellation Paris at the outset of and during the project and that Sheikh Hamad bin Jassim and Constellation Paris were satisfied with HSMC's work, thus requiring the payment of the proposed remuneration to HSMC. *Id.* at ¶¶ 27, 39.  Proposed subpoenas describing the specific documents and testimony Petitioners seek for use in the French Merits Proceeding are attached hereto as Exhibits 1 and 2.

## III.   ARGUMENT

Section 1782(a) provides, in relevant part, that:

> [t]he district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal . . . . The order may be made . . . upon the application of any interested person . . . . To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.

28 U.S.C. § 1782(a).  "A district court has wide discretion to grant discovery under Section 1782." *In re al Ibrahim*, No. 222MC00192DSFMAA, 2022 WL 18674434,

at *3 (C.D. Cal. Oct. 31, 2022), *report and recommendation adopted sub nom. In re Ibrahim*, No. 2:22-MC-192-DSF-MAA, 2022 WL 16973297 (C.D. Cal. Nov. 16, 2022). Such discretion should be exercised in light of the aims of the statute, to "provid[e] efficient assistance to participants in international litigation and to encourag[e] foreign countries by example to provide similar assistance to our courts." *Akebia Therapeutics, Inc. v. FibroGen, Inc.*, 793 F.3d 1108, 1110 (9th Cir. 2015) (quoting *Intel*, 542 U.S. at 252) (alteration in original) (internal quotation marks omitted).

A Court must first consider the three statutory requirements: (1) the person from whom discovery is sought must "reside[]" or be "found" in the district; (2) the applicant must be an "interested person" in the foreign proceeding; and (3) the discovery must be for use in a "foreign or international tribunal." *Intel*, 542 U.S. at 246 (internal quotation marks omitted); *see also In re Align Tech., Inc.*, 2022 WL 18460717, at *3.

Once the Court determines that the statutory requirements are satisfied, the Court will consider the four discretionary factors outlined in *Intel*, 542 U.S. 241 (2004). These factors are: (1) "whether the person from whom discovery is sought is a participant in the foreign proceeding;" (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal court judicial assistance;" (3) "whether the request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States;" and (4) "whether the request is unduly intrusive or burdensome." *In re Align Tech., Inc.*, 2022 WL 18460717, at *3 (citing *Intel*, 542 U.S. 241 at 264–65) (internal quotation marks omitted).

As set forth in greater detail below, Petitioners' Application satisfies each of the three statutory requirements, as well as each discretionary factor. Further, a grant of Petitioners' Application is consistent with the aims of the statute in promoting an

efficient and just resolution of the French Merits Proceeding and encouraging French courts to provide similar assistance to future litigants in domestic courts. Accordingly, this Court should issue an order permitting the service of the attached subpoenas pursuant to 28 U.S.C. § 1782.

### A. Petitioners' Application Meets the Threshold Requirements of Section 1782.

Petitioners' Application satisfies each of the three statutory requirements under 28 U.S.C. § 1782(a).

First, Sheikh Hamad bin Jassim "resides or is found" in the Central District of California. 28 U.S.C. § 1782(a). Specifically, Sheikh Hamad bin Jassim maintains a personal residence in Los Angeles, California. Minute Order at 17, *Hume St. Mgmt. Consultants Ltd. v. Sheikh Hamad bin Khalifa bin Hamad bin Abdullah bin Jassim bin Mohammed Al Thani*, 22-SMC-cv-02646 (L.A. Super. Ct. Apr. 28, 2023); s*ee Leutheusser-Schnarrenberger v. Kogan*, No. 18-MC-80171-JSC, 2018 WL 5095133, at *3 (N.D. Cal. Oct. 17, 2018) (individual resided in district where individual maintained a residential address).

Second, Petitioners are undoubtedly "interested person[s]" in the French Proceedings. 28 U.S.C. § 1782(a). "[I]nterested person[s]" is a broad term, and includes "any other person" who "merely possess[es] a reasonable interest in obtaining [judicial] assistance[.]" *Intel*, 542 U.S. at 257 (citation omitted). Here, there is "[n]o doubt litigants are included among, and may be the most common example of, the interested person[s] who may invoke § 1782[.]" *Id*. at 256 (internal quotations marks omitted). Petitioner HSMC is a party to the French Discovery Proceedings and will be a party to the French Merits Proceeding (the plaintiff), and is thus an "interested person" as a litigant. Apelbaum Decl. ¶¶ 7, 23, 30. Petitioner McKillen "possess[es] a reasonable interest in obtaining [judicial] assistance," as the dispute in the French Merits Proceeding will relate to a refusal to pay a large sum of project management fees owed to the company he owns. *Id.* at ¶¶ 6, 18, 30; *Intel*,

542 U.S. at 256 (alteration in original).   In turn, both Petitioners qualify as "interested persons" under 28 U.S.C. § 1782(a).

Third, the requested discovery is "for use" in the French Merits Proceeding, which is in front of a foreign tribunal.   28 U.S.C. § 1782(a); *Intel*, 542 U.S. at 258 ("foreign or international tribunal" includes "*conventional civil, commercial, criminal, and administrative courts*") (emphasis added) (citation omitted).   Nor does Section 1782(a) "limit the provision of judicial assistance to 'pending' adjudicative proceedings," *id*., as long as the proceeding is "within reasonable contemplation." *Id*. at 243.   Here, Petitioners intend to use the documents and testimony obtained in the French Merits Proceeding before the Paris Commercial Court.   Apelbaum Decl. ¶¶ 3, 27–29.

The documents and testimony sought speak to, at minimum, the efficacy of HSMC's claims before the French court by showing (i) that Sheikh Hamad bin Jassim was personally involved in the commercial relationship with HSMC in connection with the Saint-Germain Project as de facto manager of Constellation Paris; (ii) proof of bad faith on the part of Constellation Paris and Sheikh Hamad bin Jassim, which, under French law, enables plaintiffs to receive increased damages; and (iii) that an agreement for remuneration was reached between HSMC and Constellation Paris at the outset of and during the project, Sheikh Hamad bin Jassim and Constellation Paris were satisfied with HSMC's work, and, thus, HSMC is owed payment of the proposed remuneration.   *Id*. at ¶¶ 27, 39.   Each of these points is integral to HSMC's claims on the merits.   *Id*. at ¶¶ 26, 34, 36–37.

Further, the French Merits Proceeding is undoubtedly "within reasonable contemplation," as Petitioner HSMC has retained counsel and engaged in pre-litigation proceedings to seek discovery necessary to support its claims on the merits. *Id*. at ¶¶ 3, 23; *see Intel*, 542 U.S. at 243 ("The 'proceeding' for which discovery is sought under § 1782(a) must be within reasonable contemplation, but need not be 'pending' or 'imminent.'"); *In re Hedrick H. Ltd.*, No. MC2000048RGKDFM, 2020

WL 8457437, at *1 (C.D. Cal. May 29, 2020) (finding litigation within reasonable contemplation where petitioner retained counsel in country in which suit was to be filed who described "pre-lawsuit efforts taken on [petitioner's] behalf"); *Palantir Techs., Inc. v. Abramowitz*, 415 F. Supp. 3d 907, 912 (N.D. Cal. 2019) (granting 1782 application for discovery for use in suit not yet filed but "within reasonable contemplation"); *In re Ex Parte Application of Ambercroft Trading Ltd.*, No. 18-MC-80074-KAW, 2018 WL 2867744, at *3 (N.D. Cal. June 11, 2018) (granting 1782 application in support of contemplated foreign proceeding where petitioner sent demand letters and negotiated with proposed defendants, retained legal counsel for representation in the contemplated proceeding, and stated its intention to file suit in the "near future").  More specifically, petitioner HSMC has already undertaken pre-litigation discovery proceedings—and has been told by the court therein that additional information is needed regarding Sheikh Hamad bin Jassim to justify further actions involving him—and plans to bring suit on the merits in the near future, in which the requested discovery will be used.  Apelbaum Decl. ¶¶ 3, 23, 28.

As such, Petitioners have demonstrated that the requested discovery is "for use" in a foreign proceeding under 28 U.S.C. § 1782(a).  And in turn, Petitioners' Application meets each of the threshold statutory requirements under 28 U.S.C. § 1782(a).

**B.    The Discretionary *Intel* Factors Weigh in Favor of Granting Petitioners' Application.**

Once an applicant demonstrates that the threshold statutory requirements are met, as here, the Court has broad discretion to grant the Application and generally considers four discretionary factors, none of which are mandatory.  *In re al Ibrahim*, 2022 WL 18674434, at *3 ("A district court has wide discretion to grant discovery under Section 1782."); *In re Premises Located at 840 140th Ave. NE, Bellevue, Wash.*, 634 F.3d 557, 563 (9th Cir. 2011) (listing the four factors enumerated by the Supreme Court); *see also Adv. Micro Devices, Inc. v. Intel Corp.*, 292 F.3d 664, 669

(9th Cir. 2002) ("[A]llowance of liberal discovery seems entirely consistent with the twin aims of Section 1782: providing efficient assistance to participants in international litigation and encouraging foreign countries by example to provide similar assistance to our courts."), *aff'd*, 542 U.S. 241 (2004).  Here, each of the four discretionary factors weighs in favor of granting Petitioners' Application.

**First**, in analyzing the first factor, "[t]he key issue is whether the material is obtainable through the foreign proceeding."  *In re Align Tech., Inc.*, 2022 WL 18460717, at *4 (citation omitted).  Here, Petitioners have attempted to obtain discovery from Sheikh Hamad bin Jassim in the pre-litigation discovery proceedings, but under French law discovery of documents in his personal possession is limited to *known locations* (rather than documents in his possession as a known individual) where Sheikh Hamad bin Jassim keeps relevant documents or requires identification of a document to be accessed, the contents of which are, to an extent, already known.  Apelbaum Decl. ¶ 33; Mehtiyeva Decl. ¶¶ 12–14.  The French court determined that Petitioners possessed insufficient allegations concerning Sheikh Hamad bin Jassim to move forward with discovery from his Paris office.  Apelbaum Decl. ¶ 23; Mehtiyeva Decl. ¶ 9.  Instead, the French court has ordered discovery against the offices of Constellation Paris and Vinci Immobilier Promotion.  Constellation Paris, however, has refused to comply.  Apelbaum Decl. ¶ 23.  This has led to a chicken-or-the-egg scenario in the French Proceedings, where more discovery from Sheikh Hamad bin Jassim is needed in order to justify further discovery from Sheikh Hamad bin Jassim, and, even if successful, discovery will be heavily limited to the search of locations within the scope of the French court's jurisdiction and known to hold relevant documents (if any such locations exist) and documents Petitioners can readily identify.  What is more, there are concerns that documents could be moved to evade the scope of French discovery and/or that parts of the relevant facts are simply known to Sheikh Hamad bin Jassim and not documented.  *Id*. at ¶ 33.

Under Rule 45, however, there is clearly sufficient evidence to show that Sheikh Hamad bin Jassim has discoverable information and materials in the United States, as he was personally involved in the dispute, lives in California, and is the beneficial owner of Constellation Paris, the party in the litigation. *Id*. at ¶¶ 3, 9, 21–22. As such, the first discretionary factor weighs in favor of granting Petitioners' Application. *See In re Align Tech., Inc.*, 2022 WL 18460717, at *5 (finding first discretionary factor weighed in favor of Section 1782 applicants where the party against whom discovery was sought had critical information at issue in the foreign proceeding, was not a party to the foreign proceeding, and was outside the reach of the foreign court).

**Second**, the nature of the Paris Commercial Court, the character of the French Merits Proceeding, and the receptivity of French courts to U.S. federal judicial assistance each weighs in favor of granting Petitioners' Application. When analyzing the second factor, courts focus on "whether the foreign tribunal is willing to consider the information sought." *In re Align Tech., Inc.*, 2022 WL 18460717, at *5 (citation omitted). And if the foreign tribunal accepts evidence through 28 U.S.C. § 1782 proceedings, this factor will likely weigh in favor of ordering discovery. *See, e.g.*, *In re al Ibrahim*, 2022 WL 18674434, at *5 (second discretionary factor weighed in favor of discovery where there was no reason to believe the foreign court would decline to consider the evidence, English courts were generally receptive to evidence provided under Section 1782, and counsel was unaware of any legal prohibition applicable to the use of the evidence). Here, French courts are generally receptive to discovery obtained via Section 1782. Mehtiyeva Decl. ¶ 17; *see also In re MacDonell*, No. 2:20-CV-1332 KJM DB, 2020 WL 3961958, at *2 (E.D. Cal. July 13, 2020) ("In this regard, French Courts are receptive to mutual judicial cooperation in civil matters."); *In re Mentor Graphics Corp.*, No. 16-mc-80037-HRL, 2017 WL 55875, at *3 (N.D. Cal. Jan. 4, 2017) ("The French court concluded that the [sic] neither the Hague Convention nor the French rules of civil procedure

prevented discovery [under Section 1782] in [the Northern District of California] provided that it was conducted in a lawful manner, and provided that the French court had an opportunity to assess any evidence obtained through such discovery at the appropriate time."). And federal courts often grant discovery via Section 1782 in support of civil proceedings in France.[6]  Further, Petitioners have no reason to believe that the French court would decline to consider such information in this case, nor are they aware of any legal prohibition in French courts applicable to the discovery sought. Mehtiyeva Decl. ¶¶ 16, 18–19, 21; Apelbaum Decl. ¶ 34. As such, the second discretionary factor weighs in favor of granting Petitioners' Application.

**Third**, Petitioners' Application does not constitute an attempt to circumvent foreign proof-gathering restrictions or the policies of a foreign country or the United States. Courts have found that "[a] petitioner seeks to circumvent foreign discovery restrictions when it seeks discovery that cannot be obtained because the foreign jurisdiction *prohibits* the discovery of those documents." *In re Vahabzadeh*, No. 20-mc-80116-DMR, 2020 WL 7227205, at *4 (N.D. Cal. Dec. 8, 2020) (alteration in original) (emphasis in original) (internal quotation marks omitted). Courts have made clear that this factor is meant to determine whether the foreign court would prohibit obtaining this information through *any means*, not whether the documents may be outside the scope of discovery in the foreign proceedings. *Id.* (finding that broader discovery being available via a 1782 application than through discovery

---

[6] *See, e.g.*, *London v. Does 1-4*, 279 Fed. App'x 513, 515 (9th Cir. 2008) (affirming district court's denial of motion to quash subpoena under Section 1782 in support of French proceeding); *In re Vahabzadeh*, No. 20-MC-80116-DMR, 2020 WL 5095131, at *4 (N.D. Cal. Aug. 28, 2020); *Matter of Lufthansa Technick AG*, No. C17-1453-JCC, 2019 WL 280000, at *4 (W.D. Wash. Jan. 22, 2019); *In re MacDonell*, No. 2:17-MC-00189 TLN AC, 2017 WL 6448050, at *4 (E.D. Cal. Dec. 15, 2017); *In re Ex Parte Application of Mentor Graphics Corp.*, 2017 WL 55875, at *3 (N.D. Cal. Jan. 4, 2017); *Ex parte Rigby*, No. 13CV0271-MMA MDD, 2013 WL 622235, at *3 (S.D. Cal. Feb. 19, 2013); *In re LVL-USA LLC*, No. 220MC00018TLPCGC, 2020 WL 6051310, at *2 (W.D. Tenn. Oct. 13, 2020); *In re Consellior SAS, Kerfraval, Assn. De Documentation Pour L'industrie Nationale*, No. 13 MC 34, 2013 WL 5517925, at *4 (D. Conn. Oct. 2, 2013) (granting motion to compel related to subpoenas granted under Section 1782 in support of French proceeding).

*EX PARTE* APPLICATION FOR DISCOVERY PURSUANT TO 28 U.S.C. § 1782

procedures in French courts themselves "does not amount to circumvention") (citing *Illumina Cambridge Ltd.* v. *Complete Genomics, Inc.*, No. 19-MC-80215-WHO (TSH), 2020 WL 820327, at *5 (N.D. Cal. Feb. 19, 2020)); *id.* ("Moreover . . . the Supreme Court has held that there is no foreign discoverability limitation on the provision of section 1782 assistance, i.e., the statute does not bar granting section 1782 applications simply because the documents would be unobtainable if located in the foreign jurisdiction." (citing *Intel*, 542 U.S. at 260–61)); *In re: Application of Joint Stock Co. Raiffeinsenbank*, No. 16-MC-80203-MEJ, 2016 WL 6474224, at *6 (N.D. Cal. Nov. 2, 2016) ("Seeking more discovery than Russian discovery procedures allow does not circumvent Russian law."); *In re Accent Delight Int'l Ltd.*, 791 F. App'x 247, 251 (2d Cir. 2019) ("[T]hat a country does not enable broad discovery within a litigation does not mean that it has a policy that restricts parties from obtaining evidence through other lawful means.") (citation omitted); *see also In re Ex Parte Application of Mentor Graphics Corp.*, 2017 WL 55875, at *2–3 (finding that third Intel factor weighed in favor of permitting discovery for use in French proceedings, noting "the French court may still determine for itself whether to admit the evidence obtained through discovery in the United States."). There are no French rules or policies that would restrict Petitioners' ability to obtain this information through other lawful means, such as a Section 1782 application. Mehtiyeva Decl. ¶¶ 18–19; Apelbaum Decl. ¶¶ 35. Indeed, the Paris Court has itself attempted to order other means of gathering information regarding Sheikh Hamad bin Jassim's involvement (albeit more limited means) that have thus far proven unsuccessful, not due to legal restrictions, but rather due to recalcitrance from Constellation Paris. *Id.* at ¶ 23. As a result, the third factor weighs in favor of Petitioners' Application.

Finally, **fourth**, Petitioners' Application and accompanying subpoenas are not unduly intrusive or burdensome because they are narrowly tailored to topics that HSMC believes will be of critical importance to the French Merits Proceeding.

Courts have found that "[r]equests are unduly intrusive and burdensome where they are not narrowly tailored, request confidential information and appear to be a broad fishing expedition for irrelevant information." *In re Vahabzadeh*, 2020 WL 5095131, at *3 (internal quotation marks and citation omitted); *see In re Align Tech., Inc.*, 2022 WL 18460717, at *6 (fourth discretionary factor weighed in favor of applicants where document categories were narrowly tailored to the issues in the foreign proceeding). Here, the deposition topics and document requests are narrowly tailored to the transaction at issue in the French Proceedings. Apelbaum Decl. ¶ 37; Mehtiyeva Decl. ¶ 20. Petitioners limited the deposition topics and document requests to seek only testimony or documents concerning (i) information that Petitioners, upon information and belief, expect Sheikh Hamad bin Jassim to possess; *and* (ii) information that is highly relevant to the French Merits Proceeding insofar as it would allow Petitioners to demonstrate their claim to the sums sought, establish individual involvement on the part of Sheikh Hamad bin Jassim, and/or establish that Constellation Paris's refusal to pay for project management services was motivated by a bad-faith order from Sheikh Hamad bin Jassim. Petitioners expect these to be the critical points of disagreement at issue in the French Merits Proceeding. Apelbaum Decl. ¶¶ 29, 37. For those reasons, Petitioners' discovery requests do not represent a "fishing expedition" for irrelevant information.

As such, here, each of the four discretionary factors weigh in favor of granting Petitioners' Application.

///

///

///

## IV.    CONCLUSION

For the aforementioned reasons, Petitioners respectfully request that this Court issue an order permitting the service of the attached subpoenas pursuant to 28 U.S.C. § 1782.

DATED: May 6, 2024

WILLKIE FARR & GALLAGHER LLP

By:  _/s/ Logan M. Elliott_
        Logan M. Elliott
        Marina A. Torres
        Michael J. Gottlieb (*Pro hac vice forthcoming*)
        *Attorneys for Petitioners*

*EX PARTE* APPLICATION FOR DISCOVERY PURSUANT TO 28 U.S.C. § 1782