Marina A. Torres (SBN 259576)
mtorres@willkie.com
Logan M. Elliott (SBN 268105)
lelliott@willkie.com
WILLKIE FARR & GALLAGHER LLP
2029 Century Park East, Suite 2900
Los Angeles, California 90067
Telephone:  (310) 855-3000
Facsimile:  (310) 855-3099

Michael J. Gottlieb (*Pro hac vice forthcoming*)
mgottlieb@willkie.com
WILLKIE FARR & GALLAGHER LLP
1875 K St N.W.
Washington, D.C. 20006
Telephone: (202) 303-1000
Facsimile:  (202) 303-2000

Attorneys for Petitioners Patrick McKillen and Hume Street Management Consultants Limited

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE APPLICATION OF PATRICK MCKILLEN AND HUME STREET MANAGEMENT CONSULTANTS LIMITED<br><br>Petitioners | CASE NO.: 2:24-mc-62<br><br>**DECLARATION OF PROFESSOR KAMALIA MEHTIYEVA IN SUPPORT OF *EX PARTE* APPLICATION FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782 TO CONDUCT DISCOVERY FOR USE IN A FOREIGN PROCEEDING FROM SHEIKH HAMAD BIN JASSIM** |

DECLARATION OF PROFESSOR KAMALIA MEHTIYEVA IN SUPPORT OF EX PARTE APPLICATION FOR DISCOVERY PURSUANT TO 28 U.S.C. § 1782

I, Professor Kamalia Mehtiyeva, declare and state as follows:

1. My name is Kamalia Mehtiyeva. I am a citizen of France, and I currently reside in Paris, France. I am over the age of twenty-one years old, I have never been convicted of a crime involving moral turpitude, and I am competent to make the statements contained herein.

2. I am a law professor at Paris XII (Paris-Est Créteil), where I teach courses on French civil procedure, International Judicial Law, European Union Procedural Law, Civil Enforcement and International Arbitration. I am also director of LLM in International litigation and international arbitration. I have published a monography entitled *The Notion of Mutual Legal Assistance,* awarded the Prize of the French Branch of the International Law Association. I am also author of the annual digest on international mutual legal assistance for the *Journal du Droit International (Clunet)*.

3. My full *curriculum vitae* setting out my professional experience is attached as **Exhibit 1**.

4. I have been retained by Willkie Farr & Gallagher LLP, counsel for Hume Street Management Consultants Limited ("HSMC") and Patrick McKillen (collectively, the "Petitioners"), to provide my independent expert opinion on matters of French law relevant to Petitioners' application to conduct discovery pursuant to 28 U.S.C. § 1782 (the "Application"), including an overview of the relevant French proceedings, discovery in French courts, and the receptivity of French courts to evidence obtained through proceedings under Section 1782.

5. I make this expert witness report (the "Report") in support of Petitioners' Application to pursue discovery from Sheikh Hamad bin Jassim bin Jaber bin Mohammed bin Thani Al Thani ("Sheikh Hamad bin Jassim") ("Respondent") for use in proceedings in front of the Paris Commercial Court.

6. I will review, evaluate, and analyze additional information as it becomes available. I reserve the right to amend or supplement my opinions based upon further information learned or relied upon, and in response to opinions raised in any reports, declarations, or depositions of any other expert put forward in this matter. Therefore, the analyses and opinions described herein may be supplemented based upon future discovery and developments.

7. I am being compensated at a rate of EUR 500 per hour for my work in this matter. My compensation in this matter is not contingent on any opinion that I reach or the outcome of this action.

8. In preparing this Report, I have reviewed the Petitioners' Application in its entirety, including their Memorandum of Law (the "Memorandum") and the Declaration of David Apelbaum dated May 6, 2024 (the "Apelbaum Declaration").

### EXECUTIVE SUMMARY

1. In their Application, Petitioners request specific documents and testimony from the Respondent, which targets information and documents critical to the resolution of the proceedings in front of the Paris Commercial Court. I understand that Petitioner HSMC is preparing to bring suit on the merits in front of the Paris Commercial Court in relation to a dispute between the parties concerning remuneration owed to Petitioner HSMC by Sheikh Hamad bin Jassim's company, Constellation Paris (the "French Merits Proceeding"). Petitioner HSMC is currently engaged in pre-litigation proceedings in front of the Paris Commercial Court to procure discovery to support its claims (the "French Discovery Proceedings" and, together with the French Merits Proceeding, the "French Proceedings").

2. Petitioners' Application requests discovery of documents from the Respondent that is unavailable under French procedure. More specifically, French civil procedure does not afford parties in Petitioners' position to seek discovery

directly from an individual, and instead parties must identify the location of documents and then obtain an order allowing for a search of that location. While Petitioner HSMC has attempted to obtain discovery from Sheikh Hamad bin Jassim's office in Paris via pre-litigation discovery mechanisms available under French law, the French court found that Petitioner HSMC did not possess sufficient evidence against Sheikh Hamad bin Jassim to justify the search of his office. As such, Petitioners find themselves in an unusual position: requiring additional discovery concerning Sheikh Hamad bin Jassim in order to obtain discovery from Sheikh Hamad bin Jassim in the first instance. As a consequence, Petitioners must pursue discovery via alternative lawful avenues and thus bring their Application.

3.     Even in a scenario in which Petitioners sought discovery from specific locations relevant to the Respondent in pre-litigation discovery proceedings and were denied by a French court, I am aware of no French rule or policy that would bar Petitioners from seeking discovery elsewhere within the confines of relevant law.

4.     Indeed, French courts are generally receptive to discovery obtained via § 1782, and I have no reason to suspect that the Paris Commercial Court will be any different in this instance.

5.     I am also aware of no applicable French rules of civil procedure or other prohibitions applicable in the Paris Commercial Court that would prohibit such discovery. Nor am I aware of any proof-gathering restriction under French law applicable to evidence obtained via Section 1782 generally or under the unique circumstances of Petitioners' Application here that would prohibit—or even frown upon—Petitioners seeking via discovery via Section 1782 for use in front of the Paris Commercial Court. To the contrary, the Paris civil court has explicitly ruled otherwise.

6. Further, Petitioners' discovery requests are narrowly tailored to obtain only information crucial to the resolution of the French Proceedings, dissolving any concern that the discovery is overly burdensome.

7. Thus, I have no reason to believe that the Paris Commercial Court will decline to consider the evidence obtained through Petitioners' Application.

**SECTION I – BACKGROUND TO THE FRENCH PROCEEDINGS[1]**

8. I understand that the French Proceedings are based in a contract dispute between Petitioners and Constellation Paris concerning remuneration owed to Petitioners by Constellation Paris following Petitioner HSMC's service as project manager in the development of a hotel on the former site of the historical seat of the French Ministry of Armed Forces on the Boulevard Saint-Germain (the "Saint-Germain").

9. I further understand that HSMC has been engaged in pre-litigation discovery proceedings in front of the Paris Commercial Court. In June 2023, HSMC sought pre-litigation document production under Article 145 of the French Code of Civil Procedure (*Code de procedure civile,* the "**CPC**") from Constellation Paris, Vinci Immobilier, and Sheikh Hamad bin Jassim in front of the Paris Commercial Court. Under Article 145 of the CPC, prospective litigants can seek provisional pre-litigation discovery measures, including a document production order from the President of the court under whose jurisdiction the suit on the merits would fall, in order to preserve evidence upon which resolution of the merits suit will depend. As opposed to the U.S. discovery procedure, pre-litigation document production aims at obtaining the production of a precise document detained by a third party or the

---

[1] My understanding of the background facts comes from the Memorandum and Apelbaum Declaration and the cited documents therein.

4
DECLARATION OF PROFESSOR KAMALIA MEHTIYEVA IN SUPPORT OF EX PARTE
APPLICATION FOR DISCOVERY PURSUANT TO 28 U.S.C. § 1782

opposite party. The French Court of cassation has adopted a broader approach, allowing the production of "categories" of documents rather than a defined document. Such possibility is however subject to two restrictions: the applicant must establish (i) the link between the measure sought and the subject of the prospective claim; and (ii) the relevance of the requested measure for the prospective claim. While I understand that HSMC continues to litigate pre-litigation discovery with Constellation Paris, the Paris Commercial Court declined to issue a discovery order against Sheikh Hamad bin Jassim's office in Paris under Article 145 of the CPC. Rather, the court found that HSMC did not possess sufficient evidence to support pre-litigation discovery from Sheikh Hamad bin Jassim's office.

10. The French court's pre-litigation ruling rejecting the pre-litigation discovery must be interpreted in light of the legal regime under Article 145 of the CPC explained above. As Sheikh Hamad bin Jassim's personal involvement, or lack thereof, is central to the disputed facts in the French Proceedings, Petitioners require discovery from him in his individual capacity. However, somewhat circuitously, such discovery is unavailable to them from the French court without additional evidence—that is, without additional discovery—and even then, will be limited to documents, or categories of documents, located in specific, stated locations that may or may not exist within the reach of the French courts. As such, Petitioners bring this Application for discovery against Sheikh Hamad bin Jassim in front of this court.

**SECTION II – DISCOVERY OF EVIDENCE IN FRENCH CIVIL PROCEEDINGS**

11. The discovery requested through this Application is unavailable in the French Proceedings.

12. With respect to the French Discovery Proceeding, Petitioners have been unable to secure pre-litigation discovery against Sheikh Hamad bin Jassim's Paris

office in front of the Paris Commercial Court because of, ironically, lack of evidence (*i.e.*, discovery). The bar for pre-litigation discovery under Article 145 is high, and Petitioners have thus far been unable to meet their burden with the evidence they have in-hand to secure a discovery order against Sheikh Hamad bin Jassim's Paris office from the French court. What is more, there is no mechanism in these proceedings for taking a deposition or issuing discovery requests for all responsive documents held by an individual; discovery will be limited to specific documents, or perhaps categories of documents, within a specified location.

13. French law allows forced document production which may be ordered against a person to disclose a document or series of documents relevant to the proceedings. However, the function and the scope of forced document production in France are significantly different and narrower than those of the U.S. discovery. The purpose of article 145 of the French Civil Procedure Code, combined with articles 138, 139, and 142 of the same Code that govern force document production under French Law, is to collect a piece of evidence rather than revealing the existence of one. In other words, it cannot be used to discover existence of evidence that was unknown to the interested party prior to the discovery measure. The sole purpose of this French measure is to get access to a document the content of which is already known, at least to a certain extent. Thus, without assistance from this court the requested discovery against Sheikh Hamad bin Jassim is unobtainable in the French Discovery Proceeding.

14. With respect to the French Merits Proceeding, the rules governing the collection of evidence and the burden of proof before French civil courts are set forth in the Code of Civil Procedure. Those rules do not contain a mechanism by which parties may get an investigation order targeting other parties or third parties, other than a limited investigation order targeting a specific location.

15. In conclusion, the requested discovery—albeit highly relevant to resolving the disputed facts in the French Merits Proceeding—is unobtainable in the French Proceedings.

### SECTION III –DOCUMENTS OBTAINED PURSUANT TO 28 U.S.C. § 1782 BEFORE FRENCH COURTS

16. In light of the statutes discussed above, as well as my review and assessment of Petitioners' document requests, I believe that the Paris Commercial Court will be receptive to considering the documents and testimony sought through the Application in the French Proceedings.

17. French courts, including the Paris Commercial Court, are generally receptive to discovery obtained via Section 1782, and I have no reason to believe that the Paris Commercial Court would decline to consider such discovery here that is obtained through lawful means. Indeed, the Paris civil court has explicitly ruled that "neither the Hague Convention of March 18, 1970 on the Taking of Evidence Abroad, nor the rules of the Code of Civil Procedure preclude a party from relying, in the course of the present proceedings in France, on evidence gathered in the course of discovery proceedings initiated in parallel in the United States, insofar as this evidence was gathered by a competent authority under the law applicable in that State and in accordance with the forms defined by that law, it being noted that it will be for the French judge to assess its probative value and its impact on the merits of the dispute submitted to the court" (*Tribunal de grande instance, Paris*, 3rd ch., 2nd sect., 29 September 2016, no. 15/00961). The receptivity of the French courts to the U.S. discovery has been explicitly affirmed by the U.S. courts (District Court of Massachusetts, 2 November 2020, In *re Valitus, Ltd*. (No. 20-mc-91133-FDS, 2020 WL 6395591); District Court of South Florida, 15 January 2019, In *re Jagodzinski* (No. 18-20606-MC-WILLIAMS/TORRES, 2019 WL 1112389); District Court of

North California, 4 January 2017, In *re Mentor Graphics Corp.* (No. 16-mc-80037-HRL, 2017 WL 55875)).

18. I am also unaware of any prohibition on the use of lawfully-obtained discovery obtained via Section 1782 in French courts. Further, given that from the French legal standpoint, Petitioners do not have enough evidence to obtain a pre-litigation discovery order against Sheikh Hamad bin Jassim's Paris office, the obtaining of additional evidence via this Application would only serve to *aid* the court in the French Discovery Proceedings. As such, I do not believe that the Petitioners' application is an attempt to circumvent French proof-gathering restrictions or policy.

19. Additionally, Petitioners' application does not seek any privileged, confidential, or otherwise restricted information that would prevent the Paris Commercial Court from considering the evidence obtained through the Application.

20. Similarly, the discovery sought by the Petitioners is not unduly burdensome or invasive, as it has been narrowly tailored to only seek information from a single individual with first-hand knowledge of the key facts in dispute in and highly relevant to the resolution of the French Merits Proceeding.

21. For the foregoing reasons, I believe that the Paris Commercial Court will consider the evidence obtained from Petitioners' Application.

DATED: May 6, 2024

**PROFESSOR KAMALIA MEHTIYEVA**