UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE APPLICATION OF PATRICK MCKILLEN AND HUME STREET MANAGEMENT CONSULTANTS LIMITED, APPLICANTS, FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782 TO CONDUCT DISCOVERY FOR USE IN A FOREIGN PROCEEDING,<br><br>Applicants. | Case No. 2:24-mc-62-JFW-PD<br><br>**REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRTATE JUDGE** |

This Report and Recommendation is submitted to the Honorable John F. Walter, United States District Judge, pursuant to 28 U.S.C. § 636 and General Order 05-07 of the United States District Court for the Central District of California.

Applicants Patrick McKillen ("McKillen") and Hume Street Management Consultants Limited ('HSMC") (together "Applicants") filed an ex parte application for an order pursuant to 28 U.S.C. § 1782 permitting them to obtain discovery from Sheikh Hamad bin Jassim bin Jaber bin Mohammed bin Thani Al Thani ("Jassim") in connection with current and future legal proceedings in France.  For the reasons set forth below, it is recommended that the Application be granted.

## I. Factual Background

Applicants submit the Declaration of David Apelbaum, a lawyer in France who represents HSMC in pre-trial discovery proceedings in front of the Paris Commercial Court and related appellate proceedings (the "French Discovery Proceedings"). He will also represent HSMC in the future proceedings on the merits before the Paris Commercial Court against Constellation Paris SAS ("Constellation Paris"), a French company whose beneficial owner is Jassim (the "French Merits Proceeding" and together with the French Discovery Proceedings, the "French Proceedings"). [Dkt. No. 2, Apelbaum Decl. ¶¶ 1-3.] Applicants also submit the Declaration of Kamalia Mehtiyeva, a law professor in France who teaches courses on topics relevant to the Application and was retained by Applicants' counsel here to provide an expert opinion on pertinent French law. [Dkt. No. 3, Mehtiyeva Decl. ¶¶ 1-4.]

McKillen is the owner and director of HSMC, an Irish corporation with its principal place of business in Dublin, Ireland. [ Apelbaum Decl. ¶¶ 6, 7.] Jassim, a citizen of Qatar, is the beneficial owner of Constellation Paris, a French company created for the purpose of constructing a luxury hotel in Paris (the "Saint-Germain Project"). [Id. ¶¶ 8, 9, 26.] In 2019, Jassim approached McKillen asking whether HSMC would serve as project manager on the Saint-Germain Project; McKillen agreed, and pursuant to the agreement McKillen and HSMC were engaged to oversee all aspects of the Saint-Germain Project. [Id. ¶ 14.] A primary contractor, Gleeds Project & Construction Management Services ("Gleeds") was then retained along with Vinci Immobilier as real estate developer. [Id.] HSMC developed plans for creation of the new hotel, provided input and guidance at each stage of the development, supervised the project on-site, had decision-making authority, and played an instrumental role in presenting the project to the public on

September 14, 2021. [Id. ¶¶ 15, 16.] Jassim was personally involved in the Saint Germain Project, participating in meetings and issuing express instructions concerning the development of the site. [Id. ¶ 21.]

On September 16, 2021, HSMC sent the chair of Constellation Paris, Fady Bakhos ("Bakhos"), a letter with a draft remuneration agreement for the Saint Germain Project. [Id. ¶ 17, Dkt. No. 2-3.] HSMC had thus far worked on the project without a formal contract, as was customary based on the relationship between McKillen and Jassim on previous projects. [Id. ¶¶ 10-13, 17.] On September 26, 2021, Bakhos sent a response refusing to compensate HSMC for project management. [Id. ¶ 18.] Although Gleeds had sought HSMC's input on a number of points via email a few days earlier, Bakhos stated that "there is no project management work [in relation to the Saint-Germain Project] other than what is being undertaken by Gleeds." [Id.] As of May 6, 2024, Constellation Paris has not compensated HSMC for the services performed on the Saint Germain Project, and HSMC has received no criticism with regard to the quality of its work on the project. [Id. ¶ 19.] Multiple companies owned by Jassim or Sheikh Hamad bin Khalifa have refused to compensate HSMC for services rendered with respect to the Saint-Germain Project as well as two other luxury hotel projects. [Id. ¶ 20.]

Jassim was personally involved in the regular goings-on at the Saint-Germain site, and HSMC alleges on information and belief that he was personally involved in the refusal to compensate HSMC for project management services. HSMC bases this on (a) Jassim's frequent participation in meetings and issuance of instructions with respect to the Saint-Germain Project; (b) his personal advisor Bakhos communicated the refusal; and (c) the multiple refusals to pay HSMC referred to above. [Id. ¶¶ 20-22.]

1  HSMC is currently engaged in pre-litigation proceedings in the Paris
2  Commercial Court to procure discovery to support its claims arising from this
3  dispute -- the "French Discovery Proceeding" -- in preparation for bringing
4  suit on the merits in that court --the "French Merits Proceeding". [Id. ¶ 3;
5  Mehtiyeva Declaration at 3, ¶ 1.] In June 2023, HSMC sought pre-litigation
6  discovery from Constellation Paris, Vinci Immobilier and Jassim via a request
7  under Article 145, an ex parte mechanism in French civil procedure by which
8  litigants can apply to the court to order investigative measures to preserve,
9  before trial, proof of facts upon which the resolution of a dispute may depend.
10 HSMC has been unsuccessful in obtaining the ordering of pre-trial discovery
11 measures at Jassim's Paris office via this mechanism "given the high bar to
12 pre-trial discovery under French law and the need to provide specific
13 allegations regarding the location of potentially discoverable materials."
14 [Apelbaum Decl. ¶ 23.] In the French Discovery Proceeding, the court
15 authorized discovery against Constellation Paris and Vinci Immobilier to
16 complete the record; the former complied with the order, but "Constellation
17 Paris has thus far flatly refused to comply." [Id.]
18  French counsel for HSMC anticipates "that it will be very difficult to
19 successfully add Sheikh Hamad bin Jassim as a party to the French Merits
20 Proceeding without additional discovery." [Id. ¶ 24.] He states that Jassim
21 was closely involved in the events underlying the French Merits Proceeding –
22 that is the hiring of HSMC as project manager, the instructions given to
23 HSMC for its services, and the decision not to pay HSMC for these project
24 management services – and consequently "almost certainly has critical
25 information to support HSMC's claims." [Id. ¶ 25.] No other means of
26 obtaining this discovery against Jassim is available in the French
27 Proceedings. [Id. ¶¶ 33, 36; Mehtiyeva Decl. ¶¶ 11-15.] As a result, in this
28 matter Applicants seek documents and testimony for use in the French Merits

4

Proceeding that are otherwise unavailable to them. [Apelbaum Decl. ¶¶ 27-29, 33, 36.]

Applicants seek to use the requested information to demonstrate (1) Jassim's personal involvement in the commercial relationship with HSMC in connection with the Saint-Germain Project; (2) proof that in refusing payment to HSMC, Constellation Paris was motivated by a bad faith order from Jassim rather than an honest assessment of the value of HSMC's work on the project, which under French law enables plaintiffs to receive increased damages; and (3) that an agreement for remuneration was reached between HSMC and Constellation Paris at the outset and during the project, and that Constellation Paris and Jassim were satisfied with HSMC's work and are required to pay the amount set forth in the September 16, 2021 letter. [Id. ¶¶ 27, 29, 39.]

Accordingly, Applicants seek an order pursuant to 28 U.S.C. § 1782(a) authorizing it to issue and serve Jassim with subpoenas to produce specified documents and to testify at a deposition regarding specified topics. [*See* Dkt. Nos. 1-1, 1-2.]

**II.    Legal Standard**

Section 1782(a) provides in relevant part:

> The district court of the district in which a person resides or is found may order him to ... produce a document or other thing for use in a proceeding in a foreign or international tribunal .... The order may be made ... upon the application of any interested person .... The order may prescribe the practice and procedure ... for ... producing the document or other thing.

28 U.S.C. § 1782(a). "Section 1782's statutory language has been distilled to permit district courts to authorize discovery where three general requirements are satisfied: (1) the person from whom the discovery is sought 'resides or is found' in the district of the district court where the application is

5

made; (2) the discovery is 'for use in a proceeding in a foreign or international tribunal'; and (3) the application is made by a foreign or international tribunal or 'any interested person.'" *Khrapunov v. Prosyankin*, 931 F.3d 922, 925 (9th Cir. 2019) (quoting 28 U.S.C. § 1782(a)).

However, even where these criteria are satisfied, "a district court is not required to grant a § 1782(a) discovery application simply because it has the authority to do so." *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264 (2004). "A district court may consider the following factors in exercising its discretion under § 1782(a): (1) whether 'the person from whom discovery is sought is a participant in the foreign proceeding'; (2) the nature of the foreign tribunal, the character of the proceedings underway, and the receptivity of the foreign tribunal to U.S. federal court assistance; (3) whether the § 1782(a) request 'conceals an attempt to circumvent foreign proof-gathering restrictions or other policies'; and (4) whether the request is 'unduly intrusive or burdensome.'" *See In re Oh*, 22-mc-1649-DDL, 2023 WL 2890155, at *2 (S.D. Cal. Apr. 11, 2023) (quoting *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264-65 (2004)). "The party seeking the discovery bears the burden of establishing that the statutory requirements are met." *Id*.

**III.   Discussion**

    **A.   The Application Satisfies the Statutory Requirements**

Jassim maintains a personal residence in Los Angeles, California. *See Hume St. Mgmt. Consultants Ltd. v. Sheikh Hamad bin Khalifa bin Hamad bin Abduallah bin Jassim bin Mohammed al Thani*, 22-SMC-cv-02646 (L.A. Super. Ct. Apr. 28, 2023), Minute Order at 17. He thus resides or is found in this district. *See Leutheusser-Schnarrenberger v. Kogan,* 2018 WL 5095133 (N.D. Cal. Oct. 17, 2018) (individual resided in district where that they maintained a residential address). The first statutory requirement is

therefore satisfied.

The second statutory requirement is that the information sought is "for use" in a foreign proceeding. *See* 28 U.S.C. § 1782. To establish this an applicant must show that it has "the procedural right to submit the requested documents to the foreign tribunal," *In re Accent Delight Int'l Ltd.*, 869 F.3d 121, 132 (2d Cir. 2017), but it is not required to demonstrate that the information sought is discoverable or admissible in the foreign proceedings. *In re Request for Judicial Assistance from the Seoul Dist. Criminal Court*, 555 F.2d 720, 723 (9th Cir. 1977) ("[F]ederal courts, in responding to [§ 1782] requests, should not feel obliged to involve themselves in technical questions of foreign law relating to…the admissibility before [foreign] tribunals of the testimony or material sought."). Instead, the district court should consider "the *practical ability* of an applicant to place a beneficial document – or the information it contains – before a foreign tribunal." *In re Accent Delight Int'l Ltd.*, 869 F.3d at 131. (emphasis in original).

Applicants seek discovery for use in the French Merits Proceeding. Section 1782(a) does not "limit the provision of judicial assistance to 'pending' adjudicative proceedings," as long as the proceeding is "within reasonable contemplation." *Intel*, 542 U.S. at 243. Here, as discussed above and as set forth in the Apelbaum Declaration, Applicants intend to use the subpoenaed documents and testimony in the French Merits Proceeding before the Paris Commercial Court. [Apelbaum Decl. ¶¶ 3, 27-29.] The French Merits Proceeding is "within reasonable contemplation," as HSMC has retained counsel and engaged in pre-litigation proceedings to seek discovery necessary to support its claims on the merits. Accordingly, Applicants have satisfied the second statutory requirement.

The third statutory requirement that Applicants must show is that they are "interested person[s]." *See* 28 U.S.C. § 1782. "Litigants are included

7

among, and may be the most common example of, the 'interested person[s] who may invoke § 1782." *Intel*, 542 U.S. at 256; *see also In re Pioneer Corp v. Technicolor, Inc.*, 2018 WL 4961911, at *5 (C.D. Cal. Sept 12, 2018) ("An 'interested person' includes, but not limited to, parties in a foreign proceeding"). "[I]nterested person" is a broad term that includes any other person who merely possesses a reasonable interest in obtaining judicial assistance. *Intel*, 542 U.S. at 257 (citation omitted). HSMC is a party to the French Discovery Proceedings and will be a party to the French Merits Proceeding [Apelbaum Decl. ¶¶ 7, 23, 30] and thus qualifies as an "interested person" who may invoke § 1782. McKillen possesses a reasonable interest in obtaining judicial assistance, as the dispute in the French Merits Proceeding will relate to a refusal to pay project management fees owed to a company that McKillen owns. [Id. ¶¶ 6, 18, 30.] He therefore also qualifies as an interested person under the statute.

Therefore, the Court is authorized by § 1782 to grant the relief Applicants seek.

**B.     The Discretionary Factors Weigh in Favor of the Application**

The discretionary factors set forth in *Intel* also weigh in favor of granting the discovery requested.

**1.     Jassim Is Not a Participant in the French Discovery Proceedings, and the Documents and Testimony Sought in the Instant Subpoenas are Unavailable in those Proceedings**

When the person or entity from whom discovery is sought is a participant in the foreign proceeding, the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad. *Intel*, 542 U.S. at 264. A foreign tribunal has jurisdiction over those appearing before it, and can itself order

them to produce evidence. *Id.* In contrast, nonparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid. *Id.*

Jassim is not a participant in the French Discovery Proceedings, and the documents and testimony sought in the instant subpoenas are unavailable in those proceedings. [Apelbaum Decl. ¶¶ 24, 33.] Under Article 145 of the French Code of Civil Procedure (the "CPC"), prospective litigants can seek a document production order from the court that would have jurisdiction over the merits suit in order to preserve evidence upon which resolution of the merits suit will depend. However, the discovery must be sought from a specific location, and the requesting party must provide specific allegations that the documents are at that location. French Civil Procedure does allow litigants to ask for production of evidence from a third party in the course of litigation; however, the requesting party must specify exactly the document sought and demonstrate its existence, and it cannot simply request the production of any document related to a specific subject. The Paris Commercial Court denied HSMC's request that it issue a discovery order against Jassim's office in Paris on the ground that it did not possess sufficient evidence to support pre-litigation discovery from Jassim's office or residence. Applicants do not currently know where Jassim keeps the relevant information in his possession. [Apelbaum Decl. ¶ 33; Mehtiyeva Decl. ¶ 9.]

In short, Applicants seek discovery from Jassim because his personal involvement, or lack thereof, is central to the disputed facts in the French Proceedings, but without additional evidence (that would be contained in that discovery), Applicants may not obtain that discovery under French law. Further, even if Applicants could obtain such discovery, it would be limited to documents or categories of documents located in specific, stated locations that

9

may be outside the reach of the French courts and would not include a deposition of Jassim. [Apelbaum Decl. ¶ 33; Mehtiyeva Decl. ¶ 10.] Applicants are also concerned that the requested documents could be moved to evade the scope of French discovery and/or that some relevant facts are known to Jassim but not documented. [Apelbaum Decl. ¶ 33.]

Applicants have shown that they are not able to obtain the documents and testimony sought in the instant subpoenas in the French Discovery Proceedings. Applicants have also provided sufficient information to support their claims that Jassim possesses documents and information relevant to the French Proceedings, is not a party thereto, and that they lack an alternative source of discovery for the requested information. Accordingly, the Court finds that the first discretionary factor weighs in Applicants' favor.

### 2. The Nature and Character of the Proceedings Underway Abroad Indicate that the French Court will be Receptive to the Evidence Sought

A court presented with a § 1782(a) request may take into account the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance. *Intel*, 542 U.S. at 264. The "character of the proceedings underway abroad" here is plainly judicial in nature, and thus falls squarely within the type of proceedings § 1782 was intended to facilitate. *See In re Letters Rogatory from the Tokyo District Prosecutor's Office, Tokyo, Japan*, 16 F.3d 1016, 1019 (9th Cir. 1994) (explaining that the word "tribunal" as used in section 1782 "is intended to be read broadly to include quasi-judicial and administrative bodies and foreign investigating magistrates" in addition to courts of law). In the absence of authoritative proof that a foreign tribunal would reject evidence obtained with the aid of § 1782, courts tend to err on the side of permitting discovery. *See Palantir Techs., Inc. v. Abramowitz*, 415 F. Supp. 3d 907, 915 (N.D. Cal.

10

2019); *In re Ex Parte Appl. Varian Med, Sys. Int'l AG*, 2016 WL 1161568, at *4 (N.D. Cal. 2016).

French courts are generally receptive to discovery obtained via § 1782. [Mehtiyeva Decl. ¶ 17]. *See London v. Does 1-4*, 279 Fed. App'x 513, 515 (9th Cir. 2008) (affirming district court's denial of motion to quash subpoena under § 1782 in support of French proceeding); *In Re MacDonell*, 2020 WL 3961958, at *2 (E.D. Cal. July 13, 2020) ("In this regard, French Courts are receptive to mutual judicial cooperation in civil matters."). Applicants state they have no reason to believe that the French court would decline to consider information obtained from the subpoenas in this case, nor are they aware of any legal prohibition in French courts applicable to the discovery sought. [Mehtiheva Decl. ¶¶ 16, 18-19, 21; Apelbaum Decl. ¶ 34.] *See also In re Mentor Graphics Corp.*, 2017 WL 55875, at *3 (N.D. Cal. Jan. 4, 2017) ("The French court concluded that the [sic] neither the Hague Convention nor the French rules of civil procedure prevented discovery [under § 1782] in [the Northern District of California] provided that it was conducted in a lawful matter, and provided that the French court had an opportunity to assess any evidence obtained through such discovery at the appropriate time.") Thus, the second factor also weighs in Applicants' favor.

### 3. The Application Is Not An Attempt To Circumvent Foreign Proof-Gathering Restrictions

The third discretionary factor is whether the § 1782(a) request is an attempt to circumvent foreign proof-gathering limits or other policies of a foreign country or the United States. *Intel*, 542 U.S. at 244–45. Courts have interpreted this factor as assessing whether the foreign court prohibits obtaining the discovery through any means, not whether it exceeds the scope of discovery permitted in the foreign court. *See In re Accent Delight Int'l. Ltd.*, 791 F. App'x 247, 251 (2d Cir. 2019) ("[T]here is a difference between a

§ 1782(a) request that seeks documents that cannot be obtained in a foreign proceeding because the foreign jurisdiction does not provide a *mechanism* for such discovery, and one that seeks documents that cannot be obtained because the foreign jurisdiction *prohibits* the discovery of those documents.") (emphasis in original). In the latter, a § 1782(a) petitioner "attempt[s] to circumvent foreign proof-gathering restrictions or other policies of a foreign country." *Id*. (citing *Intel*, 542 U.S. at 265). "But in the former case, "[t]hat a country does not enable broad discovery within a litigation does not mean that it has a policy that restricts parties from obtaining evidence through other lawful means.") *Id*. (citing *Mees v. Butl*er, 793 F.3d 291, 303 n. 20 (2d Cir. 2015)). This interpretation is consistent with the Supreme Court's rejection of a foreign-discoverability rule. *See Intel*, 542 U.S. at 260 ("While comity and parity concerns may be important as touchstones for a district court's exercise of discretion in particular cases, they do not permit our insertion of a generally applicable foreign-discoverability rule into the text of § 1782.")

Courts in the Ninth Circuit have interpreted this factor consistently with the Second Circuit. *See HRC-Hainan Holding Co., LLC v. Yihan Hu*, 2020 WL 906719 (N.D. Cal. Feb. 25, 2020) ("The fact that more evidence may be obtained via a § 1782 application than via the foreign discovery procedures does not amount to circumvention and does not militate against approval of the application."); *Illumina Cambridge Ltd. v. Complete Genomics, Inc.*, 2020 WL 820327, at * 5-6 (N.D Cal. Feb. 19, 2020) (same); *In re Vahabzadeh*, 2020 WL 7227205, at *4 (N.D. Cal. Dec. 8, 2020) (rejecting argument that § 1782 application was an attempt to circumvent French proof-gathering restrictions because applicants would not have been able to obtain such discovery in French courts; fact that more evidence may be obtained via a § 1782 application than via foreign discovery procedures does not amount to circumvention*); In re Ex Parte Application of Mentor Graphics Corp.*, 2017

12

WL 55875, at *2 (N.D. Cal. Jan. 4, 2017) (finding that third *Intel* factor weighed in favor of permitting discovery for use in French proceedings, noting "the French court may still determine for itself whether to admit the evidence obtained through discovery in the United States.").

Here, the Court finds no evidence that an order authorizing § 1782 discovery would circumvent discovery in the French Proceedings. Applicants affirmed that there are no French rules or policies that would restrict Applicants' ability to obtain this information through other lawful means, such as a § 1782 application. [Mehtiyeva Decl. ¶¶ 18-20; Apelbaum Decl. ¶ 35.] Accordingly, the third factor weighs in favor of the Application.

### 4. The Subpoenas Are Not Unduly Intrusive or Burdensome

A district court should deny a § 1782 request if the district court "suspects that the request is a 'fishing expedition' or a vehicle for harassment." *In re Premises Located at 840 140th Ave. NE, Bellevue, Wash.*, 634 F.3d 557, 563 (9th Cir. 2011) (citation omitted). Unduly intrusive or burdensome requests may be rejected or trimmed. *Intel*, 542 U.S. at 245. "The proper scope of discovery arising out of a § 1782 application is generally determined by the Federal Rules of Civil Procedure." *In re Application of Joint Stock Raiffeinsenbank* ("*In re Raiffeinsenbank*"), 2016 WL 6474224, at *6 (N.D. Cal. Nov. 2, 2016).

Here, the document requests and deposition topics appear to be relevant and proportional to the transaction at issue in the French Proceeding. The Document Subpoena seeks four categories of documents and communications that relate directly or indirectly to the Saint-Germain Project. Specifically those concerning: (1) the engagement of McKillen and/or HSMC for work and/or services; (2) work performed and/or services rendered by HSMC, at HSMC's direction, and/or under HSMC's supervision, or the

quality thereof; (3) requests for payment and/or reimbursement by McKillen, HSMC, and/or their respective agents, for work performed and/or services rendered by HSMC, at HSC's direction, and/or under HSMC's supervision; and (4) payment or nonpayment to McKillen, HSMC, and/or their respective agents, for work performed and/or services rendered by HSMC, at HSMC's direction, and/or under HSMC's supervision.  [Dkt. No. 1-1 at 10.]

The Deposition Subpoena lists nine topics for examination:  (1) Jassim's role in the Saint Germain Project; (2) Jassim's and/or his agents interactions and communications concerning the Saint Germain Project, including those with McKillen, HSMC, and/or their representatives; (3) any other agreements and/or dealings that Jassim, his agents, or Constellation Paris have or had with McKillen, HSMC, and/or their agents; (4) Jassim's, his agents' and/or Constellation Paris's assessment of the quality of work performed and/or services rendered by HSMC, at HSMC's direction, and/or under HSMC's supervision regarding the Saint Germain Project, and Jassim's and/or his agents/ interactions and communications with McKillen, HSMC, and or their agents concerning the same; (5) Jassim's involvement in and assessment of requests for payment and/or reimbursement by McKillen, HSMC, and/or their agents for work performed and/or services rendered by HSMC, at HSMC's direction and/or under HSMC's supervision relating to the Saint-Germain Project; (6) Jassim's involvement in and assessment of payment, or nonpayment, to McKillen, HSMC, and/or their agents for work performed and/or services rendered by HSMC at HSMC'ss direction/,and/or under HSMC's supervision, relating to the Saint-Germain Project; (7) where and how documents and communication concerning the Saint-German Project and Applicants and/or their agents may be found and/or accessed, including whether they may be found at Jassim's Paris Offices; (8) the documents produced in response to the Document Subpoena; and (9) the matter and

14

methods in which Jassim searched for and collected the documents produced in response to the Documents Subpoena. [Dkt. No. 1-2 at 9-10.]

The Subpoenas seek documents and testimony concerning information that Applicants, upon information and belief, expect Jassim to possess, and information relevant and proportional to the French Merits Proceeding because it would allow Applicants to demonstrate their claim to the payment sought, establish Jassim's individual involvement, and show whether Constellation Paris's refusal to pay for project management services was motivated by an order from Jassim. Applicants expect these to be critical points of disagreement in the French Merits Proceeding. [Apelbaum Decl. ¶¶ 29, 37.]

The documents and testimony sought are narrowly tailored to topics critical to the resolution of the French Merits Proceeding, and they do not appear to be unduly intrusive or burdensome. As set forth below, if Jassim seeks to challenge the Subpoenas on relevance, proportionality, or other grounds, he may bring a motion to quash or modify the Subpoena.

## C. The Application May Be Granted Ex Parte.

Applicants did not serve Jassim with the Application and they seek to proceed ex parte. This Court's Local Rules generally require parties seeking ex parte relief to make "reasonable, good faith efforts to orally advise counsel for all other parties, if known, of the date and substance of the proposed ex parte application." C.D. Cal. L.R. 7-19.1. However, the Local Rules also permit a judge to waive the notice requirement when "the interest of justice requires that the ex parte application be heard without notice." C.D. Cal. L.R. 7-19.2.

Here, the Court concludes that the interest of justice supports waiver of the Court's notice requirement. "It is neither uncommon nor improper for

15

district courts to grant applications made pursuant to § 1782 ex parte. The Respondent's due process rights are not violated because he can later challenge any discovery request by moving to quash pursuant to Federal Rule of Civil Procedure 45(c)(3)." *Gushlak v. Gushlak*, 486 F. App'x 215, 217 (2d Cir. 2012). *See also In re Letters Rogatory from Tokyo Dist., Toyko, Japan*, 539 F.2d at 1216, 1219 (9th Cir. 1976) (finding that § 1782 applications are permitted on an ex parte basis because witnesses may raise objections and assert their due process rights by moving to quash the subpoenas). The Court therefore finds waiver of the Central District's ex parte notice requirements is appropriate in this matter. Jassim can challenge the Subpoena by filing a motion to quash or modify it pursuant to Rule 45(d)(3) of the Federal Rules of Civil Procedure.

## IV. Recommendation

It is recommended that the District Judge issue an Order:

(1) accepting and adopting this Report and Recommendation;

(2) granting the Application;

(3) authorizing issuance and service of the Subpoenas, without prejudice to Sheikh Hamad bin Jassim bin Jaber bin Mohammed bin Thani Al Thani or any other person affected by the Subpoenas contesting the Subpoenas as permitted by the Federal Rules of Civil Procedure. Sheikh Hamad bin Jassim bin Jaber bin Mohammed bin Thani Al Thani or any person contesting the Subpoenas shall have thirty (30) calendar days from the date of service of the Subpoenas to file any motion in this Court to contest either or both Subpoenas, which date may be extended by agreement of the parties or order of the Court. To allow for such motions, the return date on the Subpoenas must be set at least thirty-one (31) calendar days after the date of its service. Sheikh Hamad bin Jassim bin Jaber bin Mohammed bin Thani Al Thani's obligation to respond to the Subpoenas is automatically stayed upon the filing

of any motion contesting the Subpoenas, and such stay shall remain in effect until such motion is resolved. In this regard, Sheikh Hamad bin Jassim bin Jaber bin Mohammed bin Thani Al Thani and any person contesting the Subpoenas are reminded of their obligation to comply with Central District of California Local Civil Rule 37 and Magistrate Judge Donahue's discovery dispute resolution process before resorting to motion practice in connection with the Subpoena. *See* C.D. Cal. L.R. 37; http://www.cacd.uscourts.gov/honorable-patricia-donahue; and

    (4) ORDERING Applicants to serve a copy of this Report and Recommendation, as well as any Order adopting this Report and Recommendation, on Sheikh Hamad bin Jassim bin Jaber bin Mohammed bin Thani Al Thani together with service of the Subpoenas.

DATED: July 30, 2024

*Patricia Donahue*
PATRICIA DONAHUE
UNITED STATES MAGISTRATE JUDGE

**NOTICE**

Reports and Recommendations are not appealable to the Court of Appeals but are subject to the right of any party to file Objections as provided in the Local Rules Governing Duties of Magistrate Judges, and review by the District Judge whose initials appear in the Dkt. number.  No Notice of Appeal pursuant to the Federal Rules of Appellate Procedure should be filed until entry of the Judgment of the District Court.