JASON D. RUSSELL (SBN 169219)
jason.russell@skadden.com
ADAM K. LLOYD (SBN 307949)
adam.lloyd@skadden.com
KHALED B. ABBAS (SBN 335086)
khaled.abbas@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 South Grand Avenue, Suite 3400
Los Angeles, California 90071-3144
Telephone:  (213) 687-5000
Facsimile:  (213) 687-5600

*Attorneys for Specially Appearing Respondent*
SHEIKH HAMAD BIN JASSIM BIN JABER BIN MOHAMMED BIN THANI AL THANI

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **IN RE APPLICATION OF PATRICK MCKILLEN AND HUME STREET MANAGEMENT CONSULTANTS LIMITED FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782**,<br><br>Applicants. | CASE NO.: 2:24-mc-00062-JFW-PD<br><br>**SPECIALLY APPEARING RESPONDENT SHEIKH HAMAD BIN JASSIM BIN JABER BIN MOHAMMED BIN THANI AL THANI'S OPPOSITION TO APPLICANTS' SECOND EX PARTE APPLICATION FOR ORDER APPROVING ALTERNATIVE SERVICE OR, IN THE ALTERNATIVE, GRANTING LEAVE TO SERVE BY ALTERNATIVE MEANS** |

The Court should deny the procedurally improper Second *Ex Parte* Application for Order Approving Alternative Service or, in the Alternative, Granting Leave to Serve by Alternative Means (the "Second Alternative Service Application") filed on September 24, 2024, by Patrick McKillen ("McKillen") and Hume Street Management Consultants Limited ("HSMC," and collectively with McKillen, "Applicants"). There is simply no basis for extraordinary *ex parte* relief here.

The Second Alternative Service Application is attempting to short circuit, for no legitimate reason, pending Central District of California Local Rule 37 proceedings that have been initiated by Specially Appearing Respondent Sheikh Hamad bin Jassim bin Jaber bin Mohammed bin Thani al Thani ("HBJ") in anticipation of his potential motion to quash (the "MTQ") the subpoenas (the "Subpoenas") that were issued in this matter—also on an *ex parte* basis—pursuant to 28 U.S.C. § 1782 ("Section 1782"). Indeed, pursuant to Local Rules 37 and 45, as well as this Court's procedures governing discovery motions, the parties are currently scheduled to meet and confer regarding the four grounds for HBJ's anticipated MTQ **next week**, one of which is that the Subpoenas were not properly served in accordance with Rule 45. *See* Declaration of Adam K. Lloyd ("Lloyd Decl.") ¶¶ 8, 11-12 & Ex. 1 (HBJ's September 18, 2024, Rule 37 Meet & Confer Letter); *see also* Gottlieb Decl. Ex. 9 at 3.

This Court's procedures and Local Rules prohibit discovery motions, such as motions to deem service effective for discovery subpoenas, from being heard on an *ex parte* basis absent a showing of irreparable injury or prejudice. *See* https://www.cacd.uscourts.gov/honorable-patricia-donahue ("Please note that, absent an emergency, *ex parte* applications *may not* be used to obtain a ruling on a discovery dispute.") (emphasis added); L.R. 37-3 ("Unless the Court in its discretion otherwise allows, no discovery motions may be filed or heard on an *ex parte* basis absent a showing of irreparable injury or prejudice not attributable to the lack of diligence of the moving party."); L.R. 45-1 ("L.R. 37 applies to all motions relating to discovery subpoenas served on (a) parties and (b) non-parties represented by counsel.").

To obtain *ex parte* relief, Applicants are required to show that their cause will be "irreparably prejudiced if the underlying motion is heard according to regular noticed motion procedures," and that they are "without fault in creating the crisis that requires *ex parte* relief." *Mission Power Engineering Co. v. Continental Cas. Co.*, 883 F.Supp. 488, 492 (C.D. Cal. 1995) (denying *ex parte* application for failing to show irreparable prejudice); *id.* at 490 (noting that "*ex parte* motions are rarely justified"). Courts in this District routinely deny the "extraordinary relief" afforded by *ex parte* applications when these conditions are not satisfied, even in situations nearly identical to those alleged here. *See, e.g.*, *Hamilton v. TBC Corp.*, 2018 WL 9815592, at *1 (C.D. Cal. Sept. 24, 2018) (relying on Local Rule 37 and denying *ex parte* application to serve deposition subpoenas by alternative means where witnesses were allegedly "attempting to evade service" and witnesses' counsel allegedly "refused to accept service" of the subpoenas on their behalf, where movant did not show irreparable prejudice and "could have proceeded by regular noticed motion").

The Second Alternative Service Application does not even attempt to address these requirements to establish entitlement to the extraordinary *ex parte* relief that it seeks here, and thus must be denied on that basis alone.[1] *See* Second Alternative Service Application at 2-3. Nor can it, particularly when HBJ is now represented by counsel and the parties ***have already agreed to discuss these issues next week*** as part of HBJ's compliance with the Local Rules and this Court's procedures, and, as HBJ's counsel expressly informed Applicants' counsel, "the parties can litigate issues regarding service of the subpoenas in the context of HBJ's anticipated motion to quash," should that be necessary. *See* Gottlieb Decl. Ex. 9 at 5; Lloyd Decl. ¶¶ 7, 11-12 & Ex. 1.

Given these facts, HBJ's counsel repeatedly insisted that Applicants not burden the Court with an unnecessary *ex parte* application and to comply with the Local Rules and

---

[1] Applicants' sole citation in support of their supposed need for *ex parte* relief here is wholly inapposite, as it does not discuss the requirements for *ex parte* relief and the court there noted that it did not know whether the subpoena respondents had "retained counsel." *AEG Holdco, LLC. v. Vazquez*, 2022 WL 19076647, at *2 (C.D. Cal. Dec. 22, 2022); *see* Second Alternative Service Application at 3 n.2.

this Court's procedures. *See* Gottlieb Decl. Ex. 9 at 3, 5. In response, Applicants' counsel bluntly stated that those procedures were "utterly irrelevant,"[2] and proceeded to file the *ex parte* application anyway in a transparent attempt to improperly force HBJ to litigate issues from his anticipated upcoming MTQ in one business day in opposition to an *ex parte* application while knowing that his counsel was on vacation. Gottlieb Decl. Ex. 9 at 3-4.[3] As this Court has already recognized, HBJ's due process rights require more, *see* ECF #11 at 15-16, particularly now that Applicants have obtained two *ex parte* orders in this matter against a foreign dignitary before he had counsel to represent him and without giving the Court the benefit of adversarial briefing.

Indeed, the primary reason that HBJ retained counsel in this matter was to *avoid* further *ex parte* proceedings, and litigate these important issues properly and fairly. Lloyd Decl. ¶ 5. That is why, as set forth in HBJ's September 18 meet-and-confer letter, his anticipated MTQ will address, in addition to service issues: (1) lack of general and specific

---

[2] Applicants' passing contention that their Second Alternative Service Application is not a "discovery motion" under Rule 37 is contrary to the law cited above. *See* Second Alternative Service Application at 3 n.3. Likewise, Applicants' contention that they are not "claiming that the Subpoenas have, at the time of filing this Application, been 'served on'" HBJ in an apparent attempt to avoid Local Rule 45-1, *id.*, exalts form over substance, and is belied by their own Application in any event. *See id.* at 11 (expressly requesting an "order approving prior alternative service of the Subpoenas on Sheikh Hamad bin Jassim as described in the First and Second Applications for Alternative Service").

Regardless, even crediting Applicants' inconsistent position that the Subpoenas have not been actually "served on" HBJ, the Second Alternative Service Application reveals that they have known **since August 27** that their purported mail service of the Subpoenas was unsuccessful. *See id.* at 7. This further warrants denial of supposedly urgent *ex parte* relief.

[3] Given that HBJ sent his Local Rule 37 meet-and-confer letter to Applicants on September 18, as well as the apparent lack of urgency surrounding the described Second Alternative Service Application, HBJ's counsel returned Applicants' counsel's September 18 call that day, with the intention to explain that he was leaving on a long-planned trip to Italy with his wife before the birth of his second child, and to discuss what Applicants' justifications were for proceeding *ex parte* here in light of the anticipated MTQ on these issues. Lloyd Decl. ¶ 10. Mr. Gottlieb did not answer, so Mr. Lloyd left him a voicemail telling him about the trip, and asking Mr. Gottlieb to call Mr. Lloyd's personal cell phone number back at his earliest convenience to discuss. *Id.* Applicants' counsel never returned Mr. Lloyd's call. *Id.* at ¶ 11. Instead, after HBJ's counsel again inquired into the basis for Applicants' continued threatened *ex parte* relief and told Applicants' counsel in writing that he was on vacation, Applicants filed the Second Alternative Service Application the next day. *Id.* at ¶¶ 12-13. These tactics appear to be at odds with the Court's Civility and Professionalism Guidelines, with which this Court expects attorneys to comply. *See* https://www.cacd.uscourts.gov/honorable-patricia-donahue.

personal jurisdiction, and (2) failure of the Subpoenas to comply with Federal Rule of Civil Procedure 45's geographic limitations, since HBJ lives in Qatar, not Los Angeles, and the Subpoenas admittedly have nothing to do with Los Angeles. *See id.* Ex. 1. HBJ's anticipated MTQ will further address the Section 1782 factors, since "[c]ourts routinely reconsider the applicability of the § 1782 factors when ruling on motions to quash § 1782 subpoenas that were initially issued and approved without adversarial briefing." *Republic of Kazakhstan v. Lawler*, 2020 WL 417541, at *3 (D. Ariz. Jan. 27, 2020) (collecting cases, granting motion to quash subpoena for failing to satisfy Section 1782 factors after originally granting application *ex parte*, noting "the issue now before the Court is whether, with the benefit of adversarial briefing, Kazakhstan ought to be allowed to pursue discovery from Lawler under § 1782 (not simply whether the subpoena complies with Rule 45)").[4] Indeed, "[p]retermitting a full adversary response to the propriety of the § 1782(a) application actually runs afoul of *Intel*, which admonished district courts to '*ensure an airing* adequate to determine what, if any, assistance is appropriate.'" *Banca Pueyo SA v. Lone Star Fund IX (US), L.P.*, 55 F.4th 469, 475 (5th Cir. 2022) (original emphasis) (quoting *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 266 (2004)) (noting "the crucible of the adversary process is a great aid to courts in 'weed[ing] out abusive Section 1782 applications'"). HBJ is entitled to fully and fairly litigate these issues in good faith in the proper context.

In any event, and for the record, there is no evidence that HBJ is "evading" service in Los Angeles, particularly given that his counsel has already expressly agreed to discuss these issues next week in the context of HBJ's MTQ. A simpler and more plausible explanation for Applicants' admitted inability to serve HBJ in Los Angeles is *that he does*

---

[4] *See also Baxalta Inc. v. Genentech, Inc.*, 2016 WL 11529803, at *4 (N.D. Cal. Aug. 9, 2016) ("The fact that this Court previously granted the application does not preclude quashing the subpoenas at issue here" for failing to satisfy Section 1782); *Siemens AG v. W. Digital Corp.*, 2013 WL 5947973, at *1 (C.D. Cal. Nov. 4, 2013) (revisiting Section 1782 factors for application originally granted *ex parte*); *In re Microsoft Corp.*, 2006 WL 825250, at *1–2 (N.D. Cal. Mar. 29, 2006) (applying "the standards applicable to requests for assistance under Section 1782," to motion to quash and "deem[ing] that the burden of showing such assistance is warranted remains on [applicant]" since this was respondents' "first opportunity to object" to the Section 1782 application).

*not actually live here*, as HBJ's MTQ, should it be needed, and the evidence submitted therewith will make very clear.

Despite the well-known and easily accessible fact that HBJ is a foreign dignitary living in Qatar, Applicants nonetheless represented to this Court multiple times in their various *ex parte* applications that HBJ "resides in this district" and "lives in California," relying exclusively on an unpublished state court minute order from *Hume St. Mgmt. Consultants Ltd. v. Sheikh Hamad bin Khalifa bin Hamad bin Abdullah bin Jassim bin Mohammed Al Thani*, 22-SMC-cv-02646 (L.A. Super. Ct. Apr. 28, 2023) (the "State Court Order"). Whether through inadvertence or with intent, Applicants did not submit a copy of the State Court Order with their original Section 1782 application, and the Court presumably therefore did not review it prior to granting that application. But the omission is concerning because, importantly, the State Court Order *did not find that HBJ lives in Los Angeles*. Contrary to Applicants' assertion, the State Court Order recognized that HBJ did *not* own the Los Angeles property at issue in those proceedings (which Applicants now admit), and spent only a "limited time at the property" when he visited Los Angeles on an "episodic" and "limited basis." *See* Lloyd Decl. Ex. 2 at 17-18. The State Court Order nonetheless permitted *substituted service of process* at the Los Angeles property at issue because "HBJ has spent considerable money customizing the property," despite his otherwise "limited" presence there. *Id.* at 18.

As HBJ will explain in detail in the MTQ, the State Court Order is incorrect under California service of process law, not supported by the federal authorities upon which it relies, and was not subject to appellate review. Regardless, however, its findings that HBJ spent only a "limited time at the property" on an "episodic" and "limited basis" demonstrate that Section 1782's "resides" requirement cannot be met here. *See Kanino v. Kanino*, 2024 WL 3059058, at *5 (C.D. Cal. June 10, 2024), *report and recommendation adopted*, 2024 WL 3937555 (C.D. Cal. Aug. 25, 2024) (denying Section 1782 application where respondent resided in Israel, owned property in Los Angeles, but was not presently located in this District, because "[a]t least as it relates to a person, 'resides' suggests that

the person is *dwelling* in the district '*permanently* or *continuously*,'" and "[m]ere ownership and control of, and *occasional* presence in" property at a given location does not suffice to establish "residency" for the purpose of Section 1782); *In re Escallón*, 323 F.Supp.3d 552, 558 (S.D.N.Y. 2018) (denying Section 1782 application seeking discovery from couple that resided in Columbia but maintained a New York residence because the permanence required is "**permanency of *presence*, not the existence of a permanent connection to a particular piece of real estate**"). At a minimum, the State Court Order certainly is not evidence that HBJ is *currently* permanently residing in LA, which he is not.

HBJ will litigate these issues in significant detail in his MTQ (including the cherry-picked State Court evidence submitted by Applicants) should that be needed after the parties' meet-and-confer and the informal discovery conference with the Court, but he raises them now only to rebut Applicants' unrelenting aspersions that something nefarious is afoot here.

Finally, setting aside *all* of the above, Applicants' Second Alternative Service Application fails on the merits. Although HBJ's counsel is here to represent him in support of his MTQ (of which service is just one ground), HBJ has not authorized his counsel to accept service of the Subpoenas here. Lloyd Decl. ¶¶ 4, 7. Contrary to Applicants' vitriol, there is nothing reprehensible or even questionable about this routine practice. As HBJ's counsel repeatedly told Applicants (with cited authority that they wholly ignore in the Second Alternative Service Application), attempted service of a subpoena on an attorney is improper under these circumstances. *See, e.g.*, *Emcyte Corp. v. Apex Biologix, LLC*, 2021 WL 5507219, at *2-*3 (C.D. Cal. Nov. 24, 2021) (holding that service of a subpoena on an attorney who expressly "accepted service" on behalf of his client was improper under Rule 45 "because courts have typically held that service on an attorney is not sufficient to compel production of documents or presence at a deposition," and further, "even if the subpoena could have been properly served through Ms. Lopez's attorney or authorized representative, it is not clear that [the attorney] had authorization to accept service, as would be required"); *Fujikura Ltd. v. Finisar Corp.*, 2015 WL 5782351, at *7 (N.D. Cal.

Oct. 5, 2015) (collecting cases, noting that "courts have long held that service on an attorney is not sufficient to compel production of documents or presence at a deposition"); Gottlieb Decl. Ex. 9 at 3, 5. Instead, Applicants rely entirely on inapposite caselaw "where evasion [of service was] suspected." *See* Second Alternative Service Application at 10.

As shown above, there is no such evidence here—there is only evidence that HBJ does not reside in Los Angeles. And HBJ has not received any notice of the Subpoenas through Applicants' various attempts at service in Los Angeles, once again because he does not live here. Gottlieb Decl. Ex. 9 at 6. It was only through counsel's diligence in checking the docket in this matter that *counsel* became aware of Applicants' attempts at service. *Id.*; Lloyd Decl. ¶¶ 4, 14. Far from "evasion," because these Subpoenas should have never issued in the first place, HBJ's counsel *requested* copies of the Subpoenas solely for the purpose of preparing a motion to quash, reserving all rights, so that the Court could consider these issues with the benefit of full adversarial briefing. *Id.* at ¶ 5; Gottlieb Decl. Ex. 9 at 6. HBJ's rights should not be prejudiced for trying to ease the Court's burden and litigate these issues in one motion pursuant to Local Rule 37 and this Court's procedures.

Indeed, as HBJ's MTQ will make clear, the majority of courts have held that alternative service of a subpoena is not permitted at all. *See, e.g.*, *In re Hulley Enterprises Ltd.*, 2017 WL 8180604, at *1 (C.D. Cal. Sept. 13, 2017) (collecting cases, denying motion to compel for failure to demonstrate proper subpoena service, noting that "by contrast [to Rule 4, Federal Rule 45 governing subpoena service does not permit any form of mail service, nor does it allow service of the subpoena merely by delivering to a witness' dwelling place," and "[n]owhere in Rule 45 is the Court given discretion to permit alternate service in troublesome cases").

For now, HBJ respectfully requests that the Court deny the Second Alternative Service Application and allow these issues to be litigated fully and fairly in the context of HBJ's MTQ, should that be necessary after the parties' meet-and-confer and the required informal discovery conference with the Court.

DATED: September 25, 2024

        SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

        By:   */s/ Jason D. Russell*
              JASON D. RUSSELL
        *Attorneys for Specially Appearing Respondent*
        SHEIKH HAMAD BIN JASSIM BIN JABER BIN MOHAMMED BIN THANI AL THANI