1  JASON D. RUSSELL (SBN 169219)
   jason.russell@skadden.com
2  ADAM K. LLOYD (SBN 307949)
   adam.lloyd@skadden.com
3  KHALED B. ABBAS (SBN 335086)
   khaled.abbas@skadden.com
4  SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
   2000 Avenue of the Stars, Suite 200N
5  Los Angeles, California 90067
   Telephone:   (213) 687-5000
6  Facsimile:    (213) 687-5600

7  *Attorneys for Specially Appearing Movant*
   SHEIKH HAMAD BIN JASSIM BIN
8  JABER BIN MOHAMMED BIN THANI
   AL THANI

9
                    **UNITED STATES DISTRICT COURT**
10
                   **CENTRAL DISTRICT OF CALIFORNIA**
11

12  **IN RE APPLICATION OF**          ) CASE NO.: 2:24-mc-00062-JFW-PD
    **PATRICK MCKILLEN AND**          )
13  **HUME STREET**                   ) **DECLARATION OF ADAM K.**
    **MANAGEMENT**                    ) **LLOYD IN SUPPORT OF MOTION**
    **CONSULTANTS LIMITED FOR**       ) **TO QUASH SUBPOENAS ISSUED**
14  **AN ORDER PURSUANT TO 28**       ) **UNDER 28 U.S.C. § 1782.**
    **U.S.C. § 1782**,                )
15                                    )   <u>DISCOVERY MATTER</u>
              Applicants.             )
16                                    )
                                      )
17                                    ) Magistrate Judge:  Patricia Donahue
                                      ) Courtroom:  580
18                                    ) Hearing Date:  January 31, 2025
                                      ) Hearing Time: 1:30 p.m.
19                                    )
                                      ) Discovery Cutoff: Not applicable
20                                    ) Pre-trial Conference: Not applicable
                                      ) Trial Date: Not applicable
21

22

23

24

25

26

27

28

## DECLARATION OF ADAM K. LLOYD

1.      I am over the age of 18 and not a party to this action. I am an attorney admitted to practice before the courts of the State of California and have been admitted to this Court. I am an attorney at the law firm of Skadden, Arps, Slate, Meagher & Flom LLP, which is counsel of record for Specially Appearing Movant Sheikh Hamad bin Jassim bin Jaber bin Mohammed bin Thani al Thani ("HBJ") in the above-captioned matter. I submit this declaration in support of HBJ's Motion To Quash Subpoenas Issued Under 28 U.S.C. § 1782 in the above-captioned matter (the "Motion"). I make this declaration based on my own personal knowledge, and if called upon to do so, could and would testify competently thereto.

2.      On August 9, 2024, counsel for Applicants Patrick McKillen ("McKillen") and Hume Street Management Consultants Limited ("HSMC," and collectively with McKillen, "Applicants") emailed my colleague Jason Russell and I to ask if we would accept service on HBJ's behalf of two subpoenas (the "Subpoenas") that were issued on *ex parte* basis in this matter pursuant to 28 U.S.C. § 1782 ("Section 1782").

3.      On August 14, 2024, I informed Applicants' counsel that we did not currently represent HBJ with respect to the Subpoenas, and were not authorized to accept service on his behalf. I also informed Applicants' counsel that, based on our knowledge from our representation of HBJ in a matter pending in California Superior Court for the County of Los Angeles, HBJ did not live in Los Angeles.

4.      On September 13, 2024, I wrote to Applicants' counsel to inform them that we had been retained by HBJ for the purpose of challenging the Subpoenas, but that we still did not have authority to accept service on the Subpoenas on his behalf. I also informed Applicants that we had checked the docket in this matter, and saw that the Court had granted a second *ex parte* application from Applicants on August 21, 2024, this time permitting alternative service of the Subpoenas via priority mail on HBJ in Los Angeles.

5.      Because HBJ does not live in Los Angeles, and had not received and would not receive anything that was mailed to him there, we requested a copy of the Subpoenas

from Applicants' counsel that were mailed to HBJ in Los Angeles in accordance with the Court's August 21, 2024 order. We made this request in an effort to avoid further *ex parte* proceedings and for the sole purpose of preparing a motion to quash the Subpoenas, and informed Applicants' counsel that HBJ was reserving all rights to challenge the Subpoenas on any applicable ground, including improper service, lack of personal jurisdiction, and failure to meet the requirements of Section 1782 and Federal Rule of Civil Procedure 45.

6.    On September 17, 2024, Applicants emailed us an electronic copy of the Subpoenas that were mailed pursuant to the Court's August 21 order. In that same email, Applicants' counsel stated that they intended to file another *ex parte* application with the Court approving alternative service of the Subpoenas, including by emailing them to us, unless we "reconsider[e]d" our purported "refusal to accept service" on HBJ's behalf.

7.    On September 18, 2024, I emailed Applicants' counsel to state again that we were not authorized to accept service of any subpoenas on behalf of HBJ. I also provided counsel with authority from the Central District of California showing that courts have held that service of a subpoena on an attorney who does not have authority to accept such service is ineffective. I also told Applicants' counsel that their proposed *ex parte* application was procedurally and substantively unjustified.

8.    On September 18, 2024, I also sent Applicants' counsel a letter requesting a meet-and-confer pursuant to Local Rule 37 for the week of September 30, 2024, where the parties could discuss the grounds for HBJ's anticipated Motion. A true and correct copy of that letter is attached hereto as **Exhibit 1**.

9.    Also on September 18, 2024, I received a voicemail from Mr. Michael Gottlieb, who is Applicants' counsel of record. Mr. Gottlieb's voicemail stated that Applicants intended to file an *ex parte* application on the grounds articulated in Applicants' September 17 email, and asked me to contact him. I promptly returned Mr. Gottlieb's call with the intention of discussing Applicants' purported need for *ex parte* relief in light of our Rule 37 letter, and to discuss with him the necessity of pursuing such relief while I was on long-planned overseas vacation with my wife before the birth of our second child, but

LLOYD DECL. ISO MOTION TO QUASH SUBPOENAS
ISSUED UNDER 28 U.S.C. § 1782

he did not answer. I left Mr. Gottlieb a voicemail noting that we had responded to their September 17 email and had initiated Rule 37 proceedings regarding HBJ's anticipated Motion. I asked Mr. Gottlieb to call me back at his convenience on my personal cell phone number to discuss these issues, which I provided him in the voicemail, as I was traveling to Italy.

10.    No one from Applicants' counsel ever returned my call.

11.    Instead, on September 23, 2024, Applicants' counsel emailed myself and Mr. Russell offering to meet-and-confer in response to our September 18 letter on either October 3 or 4, 2024. However, Applicants' email also stated that they still intended to file their *ex parte* application on the grounds articulated in their September 17 email. Counsel did not acknowledge my voicemail or the authority we sent showing that service of subpoenas on counsel was improper.

12.    I responded to counsel's email on September 23, 2024, and stated that we were available to meet-and-confer to discuss the issues raised in our September 18 letter on October 4, 2024. In that same email, we urged counsel to reconsider filing their intended *ex parte* application, cited the local rules, and noted that Applicants had to date not provided any authority showing that such an *ex parte* application was justified in these circumstances. I also told counsel that I was on vacation in Italy, so my responses to them would likely be delayed.

13.    Applicants' counsel responded to my email on September 24, 2024, and stated that they disagreed with our cited authority, reading of the local rules, and factual "characterization." Applicants then promptly filed the Second Ex Parte Application for Order Approving Alternative Service or, in the Alternative, Granting Leave to Serve by Alternative Means (the "Second Alternative Service Application") at approximately 6:30 p.m., Pacific time. Applicants did not serve or otherwise provide us with a copy of the Second Alternative Service Application before or after it was filed. We checked the docket ourselves and paid to download copies of the application and supporting papers in order to file our opposition.

14.    On September 25, 2024, HBJ opposed the Second Alternative Service Application. Applicants filed a reply on September 26, 2024.

15.    On October 4, 2024 Applicants' counsel emailed us asking if we could "reschedule" the parties' previously agreed upon October 4 meet-and-confer on the bases for HBJ's Motion, stating that "[i]f the court denies our application, then it would make no sense to move to quash the subpoenas because they would not be operative; if the court grants our application, then the issues on which we need to confer will be narrowed and clarified." We agreed to Applicants' request to continue the October 4 meet-and-confer.

16.    On October 8, 2024, the Court denied the Second Alternative Service Application without prejudice. The Court ruled that it would consider "whether a Rule 45 subpoena may be served via substitute service; if so, what are the requirements for substitute service; and have Applicants met those requirements" in the context of a noticed motion or HBJ's anticipated Motion.

17.    On October 15, 2024, counsel for the parties met and conferred to discuss HBJ's anticipated Motion.

18.    On October 16, 2024, the parties requested an Informal Discovery Conference with Court to discuss the Motion, pursuant to the Court's procedures and requirements.

19.    On October 25, 2024, the parties participated in an Informal Discovery Conference with the Court. The Court ruled that HBJ's Motion shall address all of his challenges to the Subpoenas, including improper service, lack of personal jurisdiction, and failure to meet the requirements of Section 1782 and Federal Rule of Civil Procedure 45. The Court also ruled that the parties had satisfied the Court's Informal Discovery Conference requirements for the purpose of the Motion. The Court left the timing for HBJ's Motion up to the parties, but stated on the record that the Motion was to include a joint stipulation prepared pursuant to Local Rule 37.

20.    Following the Informal Discovery Conference, on October 28, 2024, we told Applicants' counsel that we intended to send them our portion of the joint stipulation within the next two weeks.

LLOYD DECL. ISO MOTION TO QUASH SUBPOENAS
ISSUED UNDER 28 U.S.C. § 1782

21.    On November 7, 2024, Applicants' counsel asked us to confirm that we would send our portion of the joint stipulation by November 8.

22.    On November 8, 2024, we explained to Applicants' counsel that although we intended to send them our portion of the joint stipulation by November 8, we were still in discussions with a foreign declarant and were awaiting that declaration. We informed Applicants' counsel that we would send them the joint stipulation after we received said foreign declaration.

23.    On the morning of November 12, 2024, we informed Applicants' counsel that we expected to receive the foreign declaration and could thus send them the joint stipulation within the next two days. Applicants nonetheless insisted on filing a "status report" with the Court "out of concern that additional delays will prejudice their underlying" Section 1782 application, without explaining how or why, and despite only two weeks having passed since the Informal Discovery Conference.

24.    On November 14, 2024, we informed Applicants' counsel that we had been advised that day that the foreign declarant was unable to sign before Sunday. We explained that based on our conversations, it was our belief that the substance of that declaration was now final, and had been incorporated into the joint stipulation. Given this development, we asked Applicants' counsel whether they wanted to wait until Monday, November 18, to receive our portion of the joint stipulation, along with all of our supporting declarations, or whether they instead wanted us to send our portion of the joint stipulation that day, along with all declarations except the outstanding foreign declaration, which we expected to provide on November 18.

25.    On November 15, 2024, Applicants' counsel responded and stated that we should send our portion of the joint stipulation that day, and to provide the outstanding foreign declaration on Monday. Thus, on November 15, we sent Applicants' counsel our portion of the joint stipulation, along with HBJ's supporting declarations and exhibits, which include declarants based in New York, London, and Paris. Per the parties' agreement, we intend to send HBJ's final supporting declaration from a declarant based in

5

Doha, Qatar, on November 18, 2024. The parties also agreed that Applicants would return their portion of the joint stipulation, along with Applicants' supporting declarations and exhibits, to us by Friday, November 22, 2024.

26.  I, along with Jason Russell, represent HBJ in proceedings pending in the California Superior Court for the County of Los Angeles, captioned *Hume St. Mgmt. Consultants Ltd. v. Sheikh Hamad bin Khalifa bin Hamad bin Abdullah bin Jassim bin Mohammed Al Thani*, Case No. 22-SMC-cv-02646. Attached hereto as **Exhibit 2** is a true and correct copy of an unpublished state court minute order from those proceedings, dated April 28, 2023.

27.  On May 30, 2023, HBJ filed a petition for a writ of mandate in the California Court of Appeal seeking review of the April 28, 2023 unpublished state court minute order. The California Court of Appeal did not exercise its discretion to review the state court minute order.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

Executed on November 15, 2024, in Los Angeles, California.

By: _____
                    Adam K. Lloyd

LLOYD DECL. ISO MOTION TO QUASH SUBPOENAS
ISSUED UNDER 28 U.S.C. § 1782

# EXHIBIT 1

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

300 SOUTH GRAND AVENUE

LOS ANGELES, CALIFORNIA 90071-3144

———

TEL: (213) 687-5000

FAX: (213) 687-5600

www.skadden.com

DIRECT DIAL
(213) 687-5382
DIRECT FAX
(213) 621-5382
EMAIL ADDRESS
ADAM.LLOYD@SKADDEN.COM

FIRM/AFFILIATE OFFICES
———
BOSTON
CHICAGO
HOUSTON
NEW YORK
PALO ALTO
WASHINGTON, D.C.
WILMINGTON
———
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MUNICH
PARIS
SÃO PAULO
SEOUL
SHANGHAI
SINGAPORE
TOKYO
TORONTO

September 18, 2024

**BY E-MAIL**

Samuel Hall
Willkie Farr & Gallagher LLP
1875 K Street, N.W.
Washington, DC 20006-1238
(202) 303-1443
shall@willkie.com

RE:    *Ex Parte Application of Patrick McKillen and Hume Street Management Consultants Limited et al.*, 2:24-mc-00062-JFW-PD (C.D. Cal.)

Dear Counsel:

On August 9, 2024, you emailed us to ask if we would accept service on behalf of Sheikh Hamad bin Jassim bin Jaber bin Mohammed bin Thani al Thani ("HBJ") of 28 U.S.C. § 1782 ("Section 1782") subpoenas (the "Subpoenas") that were issued on response to an *ex parte* application made by Hume Street Management Consultants Limited ("Hume Street") and Patrick McKillen (collectively with Hume Street, "Applicants") in this matter. We informed you that we did not currently represent HBJ at that time, and were not authorized to accept service on his behalf in any event.

On September 13, 2024, we informed you that we checked the docket in this matter and saw that the District Court had granted a second *ex parte* application, this time authorizing alternative service of the Subpoenas on HBJ by mailing them to an address in Los Angeles, because Applicants had been unable to personally serve HBJ. In an effort to avoid further *ex parte* proceedings, we informed you that we had since

Samuel Hall
September 18, 2024
Page 2

been retained by HBJ for the purpose of responding to the Subpoenas. Although we still were not authorized to accept service on behalf of HBJ, we asked you for a copy of any Subpoenas that were mailed to HBJ in Los Angeles, since HBJ does not live in Los Angeles and will not receive, and has not received, anything that was mailed to Los Angeles. We notified you that HBJ was reserving all rights to challenge the Subpoenas on any applicable ground, including service and personal jurisdiction.

On September 17, 2024, you provided us with a copy of the Subpoenas that were mailed to Los Angeles. We have now reviewed the Subpoenas and *ex parte* filings that led to their issuance.

Pursuant to Central District of California Local Rules 37-1, 45-1, and Judge Donahue's procedures, we are hereby requesting to meet and confer with you in a good faith effort to attempt to resolve HBJ's challenges to the Subpoenas, which do not satisfy the requirements of either Section 1782 or Federal Rule of Civil Procedure 45, among other issues.

If the parties cannot reach a resolution, HBJ intends to file a motion to quash the Subpoenas on the following grounds:

*First*, the Subpoenas should be quashed because they were never served on HBJ, let alone properly personally served on HBJ in accordance with Rule 45(b)(1)'s requirements;

*Second*, the Subpoenas must be quashed because the District Court for the Central District of California lacks general and specific personal jurisdiction over HBJ with respect to the Subpoenas, as HBJ does not live in California, the Subpoenas seek information that has no connection to California, and Applicants admit they do not know if there are any documents responsive to the Subpoena in California;

*Third*, the Subpoenas must be quashed because two of the mandatory statutory factors of Section 1782 and all of the discretionary factors a court is to consider under *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004) are not met here, since HBJ does not reside in Los Angeles and is not found here, and the President of the Paris Commercial Court and the Paris Court of Appeal have already expressly considered and rejected a request made by Hume Street in France for the same discovery that Applicants now seek from HBJ in California; and

*Fourth*, the Subpoenas must be quashed pursuant to Rule 45(d)(3)(A) because they require compliance beyond the 100-mile permissible geographic limitation for depositions and document productions and they are unduly burdensome, as they

Samuel Hall
September 18, 2024
Page 3

require compliance in Los Angeles, but HBJ does not reside in Los Angeles, is not employed here, and does not "regularly transact[] business in person" here, the documents sought by the document Subpoena are not located in Los Angeles, and because both Subpoenas seek information that the French courts have already held was "irrelevant" and not useful to the foreign proceedings.

For the avoidance of doubt, HBJ hereby also objects to the Subpoenas on the grounds articulated above, and thus compliance with the Subpoenas on the date specified therein is not required, particularly given that counsel for HBJ is willing to meet in good faith to attempt to resolve these issues prior to filing any motion to quash the Subpoenas. *See* Fed. R. Civ. P. 45(d)(2)(B); *Jackson v. City of Los Angeles*, 2023 WL 8872130, at *1-*2 (C.D. Cal. Oct. 6, 2023).

Should the parties be unable to reach a resolution, HBJ also intends to move the District Court for an award of reasonable attorneys' fees and costs incurred in responding to the Subpoenas pursuant to Federal Rule of Civil Procedure 45(d)(1) in conjunction with his motion to quash. Applicants have not taken "reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena," as the Subpoenas were sought in bad faith, for an improper purpose, and in a manner inconsistent with existing law.

We are available to meet-and-confer to discuss these issues the week of September 30, 2024. Please let us know a date and time that works with your schedule.

Sincerely,

Adam K. Lloyd

# EXHIBIT 2

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
## Civil Division
West District, Beverly Hills Courthouse, Department 205

22SMCV02646                                                          April 28, 2023
**HUME STREET MANAGEMENT CONSULTANTS LIMITED**                        8:30 AM
**vs SHEIKH HAMAD BIN KHALIFA BIN HAMAD BIN**
**ABDULLAH BIN JASSIM BIN MOHAMMED AL THANI, et**
**al.**

Judge: Honorable Edward B. Moreton, Jr.        CSR: Lisa Marie Parker, CSR#13441
Judicial Assistant: J. Fletes                  ERM: None
Courtroom Assistant: R. Salazar                Deputy Sheriff: None

APPEARANCES:

For Plaintiff(s): Tiana Baheri; Craig Jennings; Brad D. Brian; Laura D. Smolowe

For Defendant(s): Adam K. Lloyd for Sheikh Hamad bin Khalifa bin Hamad bin Abdullah bin

Jassim bin Mohammed Al Thani; Jessica Stebbins Bina; Marvin Stanley Putnam

**NATURE OF PROCEEDINGS:** Hearing on Motion to Quash Service of Summons; Hearing on Motion to Quash Service of Summons; Hearing on Motion to Quash Service of Summons; Hearing on Motion to Compel Arbitration; Hearing on Motion to Seal Motion to Compel Arbitration and Stay Further Proceedings; Hearing on Motion to Seal Plaintiff's Opposition to Beverly Hills Acquisition LLC's Motion to Compel Arbitration; Hearing on Motion to Seal Motion to Compel Arbitration Reply

Pursuant to Government Code sections 68086, 70044, and California Rules of Court, rule 2.956, Lisa Marie Parker, CSR#13441, certified shorthand reporter is appointed as an official Court reporter pro tempore in these proceedings, and is ordered to comply with the terms of the Court Reporter Agreement. The Order is signed and filed this date.

The matter is called for hearing.

The Court issues a tentative ruling on Motion to Compel Arbitration and Motions to Seal:

****************TENTATIVE RULING*********************

BACKGROUND

This action relates to a dispute over payment for services performed by Plaintiff Hume Street Management Consultants Limited at the Maybourne Beverly Hills hotel located in Beverly Hills,

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
### Civil Division
West District, Beverly Hills Courthouse, Department 205

22SMCV02646
HUME STREET MANAGEMENT CONSULTANTS LIMITED
vs SHEIKH HAMAD BIN KHALIFA BIN HAMAD BIN
ABDULLAH BIN JASSIM BIN MOHAMMED AL THANI, et
al.

April 28, 2023
8:30 AM

Judge: Honorable Edward B. Moreton, Jr.
Judicial Assistant: J. Fletes
Courtroom Assistant: R. Salazar

CSR: Lisa Marie Parker, CSR#13441
ERM: None
Deputy Sheriff: None

California (the "Hotel"). Plaintiff is an Irish-based consulting and management Company.
(Compl. ¶2.) Plaintiff alleges it is owed millions of dollars in fees for day-to-day management of
the Hotel, overseeing and designing its redevelopment, and navigating the local government
planning and permitting requirements for the redevelopment. (Compl. ¶5.) Plaintiff's directors
include Patrick McKillen and Liam Cunningham. (Bina Decl. ¶2.)

The operative complaint alleges claims for (1) breach of contract, (2) account stated, (3) quantum
meruit, (4) promissory estoppel, and (5) unjust enrichment. Plaintiff has sued several entity and
individual defendants including as relevant here, Defendant Beverly Hills Acquisition LLC
("BHA") which owns the Hotel.

On December 10, 2020, BHA entered into a Hotel Management Agreement with respect to the
Hotel ("HMA"). (Ex. K to Socker Decl.) The managing entity for the Hotel is Maybourne Hotels
Limited ("MHL"). (Id.) At the time of entering the HMA, Cunningham, a Hume Street director,
was also a director of MHL and signed the HMA on MHL's behalf. (Ex. K to Socker Decl.;
Socker Decl. ¶3.) The following year, in 2021, McKillen, a Hume Street principal also became a
director of MHL. (Socker Decl. ¶3.) The HMA states that it is the "entire agreement among the
Parties and their affiliates." (Id. ¶22.8.) Hume Street is not a signatory to the HMA. (Ex. K to
Socker Decl.)

Pursuant to the HMA, MHL was responsible for the day-to-day management and operation of
the Hotel. (Ex. K to Socker Decl. At ¶¶3.1.1-3.1.17.) MHL, with McKillen and Cunningham as
directors, was also responsible for larger scale works for the Hotel as and when agreed to by the
parties, including "opportunities to renovate or enlarge the Hotel, or to develop apartments or
condominiums for sale or lease at the Hotel." (Id. at ¶3.4.)

The HMA contains an arbitration provision which states that "any dispute … arising out of and
relating to this Agreement shall be settled by Arbitration … under the then existing Arbitration
Rules of the AAA … in New York or such other location as mutually agreed to by the Parties
hereto[.]" (Id. at ¶¶ 22.1.1, 22.1.4)

There is a pending arbitration in London initiated by Hume Street's principal, McKillen.
("London Arbitration"). (Ex. H to Faber Decl.) The arbitration relates to an Option Agreement
under which McKillen claims he is entitled to the value he had created in connection with the
Hotel. (Ex. H to Faber Decl., at ¶¶ 5,25) McKillen contends in the London Arbitration—as

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
### Civil Division
West District, Beverly Hills Courthouse, Department 205

22SMCV02646                                                      April 28, 2023
HUME STREET MANAGEMENT CONSULTANTS LIMITED                         8:30 AM
vs SHEIKH HAMAD BIN KHALIFA BIN HAMAD BIN
ABDULLAH BIN JASSIM BIN MOHAMMED AL THANI, et
al.

Judge: Honorable Edward B. Moreton, Jr.         CSR: Lisa Marie Parker, CSR#13441
Judicial Assistant: J. Fletes                   ERM: None
Courtroom Assistant: R. Salazar                 Deputy Sheriff: None

Plaintiff does here—that he took on responsibility for the management and overall strategic development of the Hotel. (Id. at ¶25.)

The Option Agreement at issue in the London Arbitration incorporates the arbitration provision of another agreement (the Transaction Agreement), which states: "Any dispute arising out of or in connection with this [Agreement], including any question regarding its existence, validity or termination, shall be referred to and finally resolved by arbitration under the [London Court of International Arbitration ("LCIA")] Rules which Rules are deemed to be incorporated by reference into this paragraph." (Ex. B to Faber Decl. ¶6; Ex. A to Faber Decl. ¶12.6.) Neither BHA nor Plaintiff is a signatory to the Option Agreement. (Ex. B to Farber Decl.)

This hearing is on BHA's motion to compel arbitration. BHA argues that an agreement relating to the management and development of the Hotel contains a mandatory arbitration provision, and while Plaintiff is not a signatory to the agreement, equitable estoppel requires that Plaintiff be bound by the arbitration agreement which was executed by its director, Cunningham. Alternatively, BHA requests that the Court should submit the threshold issue of arbitrability to the arbitrator presiding over the London Arbitration initiated by Hume Street's principal McKillen where McKillen has argued that an option agreement at issue in that arbitration applies to the Hotel and obligates payment for the value he added to the Hotel as a result of his alleged management and overall strategic development of the Hotel. BHA also asks to seal certain documents filed in support of its motion to compel arbitration.

MOTION TO SEAL

A court may order records to be filed under seal when the following conditions are met: "(1) [t]here exists an overriding interest that overcomes the right of public access to the record[s]; (2) [t]he overriding interest supports sealing the record[s]; (3) [a] substantial probability exists that the overriding interest will be prejudiced if the record[s are] not sealed; (4) [t]he proposed sealing is narrowly tailored; and (5) [n]o less restrictive means exist to achieve the overriding interest." (Cal. Rules of Court 2.550(d).)

In ruling on a motion to seal, the court must weigh the competing interests and concerns. This process necessitates (1) identifying the specific information claimed to be entitled to protection from public disclosure, (2) identifying the nature of the harm threatened by disclosure, and (3) identifying and accounting for countervailing considerations. (H.B. Fuller Co. v. Doe (2007) 151

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
### Civil Division
West District, Beverly Hills Courthouse, Department 205

22SMCV02646                                                    April 28, 2023
HUME STREET MANAGEMENT CONSULTANTS LIMITED                     8:30 AM
vs SHEIKH HAMAD BIN KHALIFA BIN HAMAD BIN
ABDULLAH BIN JASSIM BIN MOHAMMED AL THANI, et
al.

Judge: Honorable Edward B. Moreton, Jr.          CSR: Lisa Marie Parker, CSR#13441
Judicial Assistant: J. Fletes                    ERM: None
Courtroom Assistant: R. Salazar                  Deputy Sheriff: None

Cal.App.4th 879, 894.) Therefore, in order to prevail on his or her motion, the moving party must present a specific enumeration of the facts sought to be withheld and the specific reasons for withholding them. (Id. at 904.)

The California Supreme Court has held that the First Amendment provides "a right of access to ordinary civil trial and proceedings." (NBC Subsidiary (KNBC-TV), Inc. v. Superior Court (1999) 20 Cal.4th 1178, 1212.) The court further noted its belief that "the public has an interest, in all civil cases, in observing and assessing the performance of its public judicial system." (Id. at 1210.) There is a presumption of openness in civil court proceedings. (Id., at 1217.) Therefore, it is up to this Court to determine if that presumption has been overcome.

Courts must find compelling reasons, prejudice absent sealing and the lack of less-restrictive means, before ordering filed documents sealed. (Hurvitz v. Hoefflin (2000) 84 Cal.App.4th 1232, 1246; KNBC-TV, 20 Cal.4th at 1208-1209 n. 25; Champion v. Superior Court (1988) 201 Cal.App.3d 777, 787.) A compelling reason could include to protect confidential trade secrets, which "have been recognized as a constitutionally protected intangible property interest." (DVD Copy Control Assn., Inc. v. Bunner (2003) 31 Cal.4th 864, 878 (internal citations omitted).)

A proposed sealing must be narrowly tailored to serve the overriding interest, such as by sealing portions of pleadings or redacting particular text. (In re Marriage of Burkle (2006) 135 Cal.App.4th 1045, 1052, 1070.) An application to seal must be accompanied by a declaration containing facts sufficient to justify sealing. (Cal. Rules of Court, Rule 2.551(b)(1).)

A "contractual obligation not to disclose can constitute an overriding interest" sufficient to justify sealing the requested documents so long as the moving party establishes that disclosure of the information will result in substantial prejudice. (Universal City Studios, Inc. v. Superior Court (2003) 110 Cal. App. 4th 1273, 1283-1284.)

BHA asks to seal four categories of documents: (1) a set of agreements and correspondence related to a Transaction Agreement, an incorporated Option Agreement, a related Option Exercise Letter and a "Notice of Investor Return" calculation (the "Transaction Documents"); (2) hotel management agreements and corresponding amendments thereto (the "Hotel Management Documents"), (3) pleadings related to a confidential, currently pending arbitration proceeding in London ("Arbitration Pleadings"), and (4) portions of the motion to compel and reply that quote from the foregoing categories of confidential materials. BHA's motion to seal is unopposed.

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**
**Civil Division**
West District, Beverly Hills Courthouse, Department 205

22SMCV02646                                                          April 28, 2023
HUME STREET MANAGEMENT CONSULTANTS LIMITED                          8:30 AM
vs SHEIKH HAMAD BIN KHALIFA BIN HAMAD BIN
ABDULLAH BIN JASSIM BIN MOHAMMED AL THANI, et
al.

Judge: Honorable Edward B. Moreton, Jr.          CSR: Lisa Marie Parker, CSR#13441
Judicial Assistant: J. Fletes                     ERM: None
Courtroom Assistant: R. Salazar                   Deputy Sheriff: None

Indeed, Plaintiff asks to seal references to the Transaction Documents and an additional contract in its own opposition papers.

Courts have recognized that an entity has an "overriding interest" in the protection of confidential or commercially sensitive information. (See Universal City Studios Inc. v. Superior Court (2003) 110 Cal.App.4th 1273, 1285-86 (2003) (noting that the court "ordinarily would order sealing" of "financial information involv[ing] confidential matters relating to the business operations of defendant" because disclosure "would interfere with its ability to effectively compete in the marketplace … [and] there is a substantial probability that their revelation would prejudice the foregoing legitimate interests of defendant").)

Each of the four categories of documents BHA seeks to seal contain confidential and commercially sensitive information. The Transaction Documents reference shareholder details and confidential equity value formulas and calculations. (Faber Motion to Seal ("MTS") Decl. ¶ 3.) The Hotel Management Documents contain commercially sensitive information such as how the hotels are managed, their annual budget, how "management fees" are to be calculated, and how their intellectual property may be utilized. (Clot MTS Decl. ¶¶ 2-3; Faber MTS Decl. ¶ 5.) Both sets of documents contain confidentiality provisions, evidencing the parties' intent to keep the contents of these agreements out of the public domain. (Clot MTS Decl. ¶4; Faber MTS Decl. ¶6.)

Likewise, the Arbitration Pleadings are required to be kept confidential by the applicable arbitration rules. The arbitrations are submitted to the LCIA, and under that forum's rules, parties to the arbitration are required "to keep confidential … all materials in the arbitration created for the purpose of the arbitration and all other documents produced by another party in the proceedings not otherwise in the public domain." In addition, the Arbitration Pleadings contain detailed descriptions of confidential information from the Transaction Documents and Hotel Management Documents.

Similarly, redacted portions of the motion to compel, opposition and reply quote from the Transaction Documents, the Hotel Management Documents, and the Arbitration Pleadings.

Without sealing, the release of the documents would jeopardize the parties' business relationships because they improperly reveal to competitors the details of the parties' financial decisions and relationships. (Faber MTS Decl. ¶ 4.) Competitors would become privy to the

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
## Civil Division
West District, Beverly Hills Courthouse, Department 205

22SMCV02646                                                        April 28, 2023
**HUME STREET MANAGEMENT CONSULTANTS LIMITED**                      8:30 AM
**vs SHEIKH HAMAD BIN KHALIFA BIN HAMAD BIN**
**ABDULLAH BIN JASSIM BIN MOHAMMED AL THANI, et**
**al.**

Judge: Honorable Edward B. Moreton, Jr.        CSR: Lisa Marie Parker, CSR#13441
Judicial Assistant: J. Fletes                  ERM: None
Courtroom Assistant: R. Salazar                Deputy Sheriff: None

parties' strategies, risking harm to their competitive standing in the marketplace. (Id.)

On these facts, the Court concludes that there exists an overriding interest that overcomes the right of public access to the records; the overriding interest supports sealing the records; and a substantial probability exists that the overriding interest will be prejudiced if the records are not sealed.

Further, the Court finds that the proposed sealing is narrowly tailored to protecting the confidential business information, while leaving unredacted portions of the materials that provide context for the motion to compel, such as the arbitration provisions and the signatories to the arbitration agreements. There are no less restrictive means to protect this information other than the motion to seal. Accordingly, the Court grants BHA and Plaintiff's motions to seal. (Cf. Vill. Roadshow Films Bvi v. Warner Bros. Entm't, 2022 Cal. Super. LEXIS 36266 at *44 (granting motion to seal confidential financial information and business strategies); Mehta v. Netflix, Inc., 2022 Cal. Super. LEXIS 9745 at *4-*5 (sealing is narrowly tailored to protect only internal business strategies which would not limit the public's understanding of the lawsuit, and that there are no less restrictive means to protect Netflix's interests); Diamond v. Uber Techs., Inc., 2018 Cal. Super. LEXIS 6615 at *2 (granting order to seal budget information and finding that proposed sealing is narrowly tailored as Defendant only seeks to seal documents that are particularly confidential and sensitive).)

Accordingly, the Court grants the parties' motions to seal.

MOTION TO COMPEL ARBITRATION

Applicability of FAA and CAA

The Federal Arbitration Act ("FAA") applies when an arbitration clause is present in an agreement involving transnational commerce. (Metalclad Corp. v. Ventana Environmental Organizational Partnership (2003) 109 Cal. App. 4th 1705, 1712; see also 9 U.S.C. § 1 (scope of FAA includes arbitration under any contract involving "commerce among the several states or with foreign nations"); Mitsubishi Motors Corp. v. Soler Chrysler Plymouth (1985) 473 U.S. 614, 631 (FAA's presumption in favor of arbitration "applies with special force in the field of international commerce").)

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
## Civil Division
West District, Beverly Hills Courthouse, Department 205

22SMCV02646                                                                April 28, 2023
HUME STREET MANAGEMENT CONSULTANTS LIMITED                                  8:30 AM
vs SHEIKH HAMAD BIN KHALIFA BIN HAMAD BIN
ABDULLAH BIN JASSIM BIN MOHAMMED AL THANI, et
al.

Judge: Honorable Edward B. Moreton, Jr.        CSR: Lisa Marie Parker, CSR#13441
Judicial Assistant: J. Fletes                  ERM: None
Courtroom Assistant: R. Salazar                Deputy Sheriff: None

Here, both the HMA and Option Agreement are agreements involving international commerce. The HMA covers management services provided by a UK company, MHL, for a California LLC (BHA) in connection with a California hotel. In turn, the Option Agreement contemplates the management of assets in the UK, and McKillen claims it contemplates worldwide assets including the Hotel. The FAA thus controls enforceability of both the HMA and the Option Agreement.

Under the FAA, arbitration agreements are "valid, irrevocable and enforceable." 9 U.S.C. §2. The overarching purpose of the FAA is to "ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings." (AT&T Mobility LLC v. Concepcion (2011) 563 U.S. 333, 344.) A court must interpret arbitration provisions liberally, resolving doubts in favor of arbitration. (Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp. (1983) 460 U.S. 1, 24-25.)

However, while the arbitration agreement is governed by the FAA, the agreement may be enforced via the summary procedures provided by the California Arbitration Act ("CAA"). (Rosenthal v. Great Western Financial Securities Corp. (1996) 14 Cal. 4th 394, 409-410.) It is a "general and unassailable proposition . . . that States may establish the rules of procedure governing litigation in their own courts," even though the controversy is governed by substantive federal law. (Felder v. Casey¿(1988) 487 U.S. 131, 138.) By the same token, however, a state procedural rule must give way "if it impedes the uniform application of the federal statute essential to effectuate its purpose, even though the procedure would apply to similar actions arising under state law." (McCarroll v. L.A. County etc. Carpenters¿(1957) 49 Cal. 2d 45, 61, 62.)

"We think it plain¿the California procedures for a summary determination of the petition to compel arbitration serve to further, rather than defeat, the enforceability policy of the [FAA.]" ¿(Rosenthal, 14 Cal. 4th at 409.) Code Civ. Proc. § 1281.2 and¿1290.2¿"display no hostility to arbitration as an alternative to litigation; to the contrary, the summary procedure provided, in which the existence and validity of the arbitration agreement is decided by the court in the manner of a motion, is designed to further the use of private arbitration as a means of resolving disputes more quickly and less expensively than through litigation." (Id.)

As with federal law, under California¿law,¿public policy favors arbitration as an efficient and less expensive means of resolving private disputes. (Moncharsh¿v.¿Heily¿&¿Blase¿(1992) 3

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
### Civil Division
West District, Beverly Hills Courthouse, Department 205

**22SMCV02646**                                                     April 28, 2023
**HUME STREET MANAGEMENT CONSULTANTS LIMITED**        8:30 AM
**vs SHEIKH HAMAD BIN KHALIFA BIN HAMAD BIN**
**ABDULLAH BIN JASSIM BIN MOHAMMED AL THANI, et**
**al.**

Judge: Honorable Edward B. Moreton, Jr.          CSR: Lisa Marie Parker, CSR#13441
Judicial Assistant: J. Fletes                    ERM: None
Courtroom Assistant: R. Salazar                  Deputy Sheriff: None

Cal.4th 1, 8-9;¿AT&T Mobility LLC v. Concepcion,¿563 U.S. at 339.)¿ "[A]rbitration agreements should be liberally interpreted, and arbitration should be ordered unless the agreement clearly does not apply to the dispute in question." (Vianna v. Doctors' Management Co. (1994) 27 Cal. App. 4th 1186, 1189). "Doubts as to whether an arbitration clause applies to a particular dispute are to be resolved in favor of sending the parties to arbitration." (Id.)

To further that policy, Code Civ. Proc. §1281.2 requires a trial court to enforce a written arbitration agreement unless it finds (1) no written agreement to arbitrate exists, (2) the right to compel arbitration has been waived, (3) grounds exist for rescission of the agreement or (4) litigation is pending that may render the arbitration unnecessary or create conflicting rulings on common issues.

When seeking to compel arbitration, the initial burden lies with the moving party to demonstrate the existence of a valid arbitration agreement by a preponderance of evidence.¿ (Ruiz v. Moss Bros. Auto Group (2014) 232 Cal.App.4th 836, 841-42; Gamboa v. Northeast Community Clinic (2021), 72 Cal.App.5th 158, 164-65.)¿ It is sufficient for the moving party to produce a copy of the arbitration agreement or set forth the agreement's provisions.¿ (Gamboa, 72 Cal.App.5th at 165.)¿ The burden then shifts to the opposing party to prove by a preponderance of evidence any defense to enforcement of the contract or the arbitration clause.¿ (Ruiz, 232 Cal.App.4th at 842; Gamboa, 72 Cal.App.5th at 165.) The trial court then weighs all the evidence submitted and uses its discretion to make a final determination.¿ (Engalla v. Permanente Medical Group, Inc. (1997) 15 Cal.4th 951, 972.)

If the court orders arbitration, then the court shall stay the action until arbitration is completed.¿ (See Code Civ. Proc., § 1281.4.)

Existence of Arbitration Agreement

BHA points to arbitration provisions in two agreements, the HMA and the Option Agreement. Plaintiff is not a signatory to the HMA and neither BHA nor Plaintiff are signatories to the Option Agreement. Nevertheless, BHA contends that Plaintiff is bound by the arbitration agreements under the doctrine of equitable estoppel.

"Generally speaking, one must be a party to an arbitration agreement to be bound by it or invoke it." (Westra v. Marcus & Millichap Real Estate Investment Brokerage Co., Inc. (2005) 129

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
### Civil Division
West District, Beverly Hills Courthouse, Department 205

**22SMCV02646**                                                        April 28, 2023
**HUME STREET MANAGEMENT CONSULTANTS LIMITED**                         8:30 AM
**vs SHEIKH HAMAD BIN KHALIFA BIN HAMAD BIN**
**ABDULLAH BIN JASSIM BIN MOHAMMED AL THANI, et**
**al.**

Judge: Honorable Edward B. Moreton, Jr.        CSR: Lisa Marie Parker, CSR#13441
Judicial Assistant: J. Fletes                  ERM: None
Courtroom Assistant: R. Salazar                Deputy Sheriff: None

Cal.App.4th 759, 763; see Rowe v. Exline (2007) 153 Cal.App.4th 1276, 1284.) "Arbitration is a favored method of resolving disputes, but the policy favoring arbitration does not eliminate the need for an agreement to arbitrate and does not extend to persons who are not parties to an agreement to arbitrate". ¿(Matthau v. Superior Court¿(2007) 151 Cal.App.4th 593, 598; see also Freeman v. State Farm Mut. Auto. Ins. Co.¿(1975) 14 Cal.3d 473, 481¿("There is indeed a strong policy in favor of enforcing agreements to arbitrate, but there is no policy compelling persons to accept arbitration of controversies which they have not agreed to arbitrate and which no statute has made arbitrable");¿Goldman v. SunBridge Healthcare, LLC¿(2013) 220 Cal.App.4th 1160, 1169¿("there is no policy compelling persons to accept arbitration of controversies which they have not agreed to arbitrate").)

However, "[t]here are exceptions to the general rule that a nonsignatory to an agreement cannot be compelled to arbitrate and cannot invoke an agreement to arbitrate, without being a party to the arbitration agreement." (Westra, 129 Cal.App.4th at 765; see Rowe,153 Cal.App.4th at 1284.) One such exception is based on the doctrine of equitable estoppel. (Boucher v. Alliance Title Co., Inc. (2005) 127 Cal.App.4th 262, 268; Goldman v. KPMG, LLP (2009) 173 Cal.App.4th 209, 220.)

Under that doctrine, as applied in "both federal and California decisional authority, a nonsignatory defendant may invoke an arbitration clause to compel a signatory plaintiff to arbitrate its claims when the causes of action against the nonsignatory are 'intimately founded in and intertwined' with the underlying contract obligations." (Boucher, 127 Cal.App.4th at 271; see Goldman, 173 Cal.App.4th at 217–218.) As one court explained, "if a plaintiff relies on the terms of an agreement to assert his or her claims against a nonsignatory defendant, the plaintiff may be equitably estopped from repudiating the arbitration clause of that very agreement." (Goldman, 173 Cal.App.4th at 220.) In other words, a signatory to an agreement with an arbitration clause cannot "have it both ways"; the signatory "cannot, on the one hand, seek to hold the non-signatory liable pursuant to duties imposed by the agreement, which contains an arbitration provision, but, on the other hand, deny the arbitration's applicability because the defendant is a non-signatory." (Id.)

While the doctrine is stated in terms of a signatory plaintiff who is seeking to enforce the terms of the contract containing the arbitration, at least one court has extended the doctrine to a nonsignatory plaintiff. In JSM Tuscany v. Superior Court (2011) 193 Cal.App.4th 1222, the Court of Appeal held that a nonsignatory plaintiff "can be compelled to arbitrate when a

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
### Civil Division
West District, Beverly Hills Courthouse, Department 205

22SMCV02646                                                        April 28, 2023
HUME STREET MANAGEMENT CONSULTANTS LIMITED                        8:30 AM
vs SHEIKH HAMAD BIN KHALIFA BIN HAMAD BIN
ABDULLAH BIN JASSIM BIN MOHAMMED AL THANI, et
al.

Judge: Honorable Edward B. Moreton, Jr.        CSR: Lisa Marie Parker, CSR#13441
Judicial Assistant: J. Fletes                  ERM: None
Courtroom Assistant: R. Salazar                Deputy Sheriff: None

preexisting relationship existed between the nonsignatory and one of the parties to the arbitration agreement, making it equitable to compel the nonsignatory to arbitrate as well." (Id. at 1240.) The court reasoned that "[w]hen that plaintiff is suing on a contract—on the basis that, even though the plaintiff was not a party to the contract, the plaintiff is nonetheless entitled to recover for its breach, the plaintiff should be equitably estopped from repudiating the contract's arbitration clause." (Id. at 1239-40.)

Here, Plaintiff is not suing on the HMA or the Option Agreement. Hume Street is asserting claims based on its own separate contract. The Complaint pleads that Plaintiff's claims are based on its oral and implied in fact agreement providing that Plaintiff would manage and redevelop the Hotel in exchange for compensation. (Compl. ¶ 51.) Plaintiff is not seeking to recover for breaches of the HMA or the Option Agreement. That being so, the basis for equitable estoppel—relying on an agreement for one purpose while disavowing the arbitration clause of the agreement—is absent here.

Notwithstanding, BHA argues that Plaintiff's claims are "dependent on or inextricably intertwined" with the HMA and Option Agreement. Under the HMA, MHL is to perform the same services that Plaintiff claims it performed here. (Ex. K to Socker Decl. at ¶ 3.1.) Similarly, Plaintiff's principal (McKillen) has claimed that the Option Agreement entitles him to the value he added as a result of the work he performed on the Hotel, which is the same claim being asserted by Plaintiff.

However, "even if a plaintiff's claims touch matters relating to the arbitration agreement, the claims are not arbitrable unless the plaintiff relies on the agreement to establish its cause of action." (Goldman, 173 Cal.App.4th at 230.) Here, Plaintiff is not relying on either the HMA or the Option Agreement and is seeking only fees owed under its direct agreement with Defendants.

On these facts, the Court concludes Plaintiff is not bound by arbitration agreements in the HMA or Option Agreement, to which Plaintiff is not a signatory and pursuant to which Plaintiff is not seeking a right to recover damages.

Submitting Arbitrability to London Arbitrator

BHA's alternative argument is that the arbitrator overseeing the Option Agreement dispute between McKillen and parties related to BHA should decide the threshold issue of whether

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
### Civil Division
West District, Beverly Hills Courthouse, Department 205

22SMCV02646                                                      April 28, 2023
HUME STREET MANAGEMENT CONSULTANTS LIMITED                        8:30 AM
vs SHEIKH HAMAD BIN KHALIFA BIN HAMAD BIN
ABDULLAH BIN JASSIM BIN MOHAMMED AL THANI, et
al.

Judge: Honorable Edward B. Moreton, Jr.        CSR: Lisa Marie Parker, CSR#13441
Judicial Assistant: J. Fletes                  ERM: None
Courtroom Assistant: R. Salazar                Deputy Sheriff: None

Plaintiff's claims should be arbitrated. California law forecloses this argument.

California case law is clear that "an arbitrator has no power to determine the rights and obligations of one who is not a party to the arbitration agreement. [Citation.] The question of whether a nonsignatory is a party to an arbitration agreement is one for the trial court in the first instance." (American Builder's Assn. v. Au-Yang¿(1990) 226 Cal.App.3d 170, 179; see also¿Matthau, 151 Cal.App.4th at 604¿("[w]hether or¿not an arbitration agreement is operative against a person who has not signed it involves a question of 'substantive arbitrability' which is to be determined by the court");¿City of Hope v. Bryan Cave, L.L.P.¿(2002) 102 Cal.App.4th 1356, 1369¿("The determination of standing to arbitrate as a party to the contractual arbitration agreement is a question of law for the trial court in the first instance.").)

This rule is grounded on policy concerns explained by the court in¿American Builder's: "If an arbitrator, rather than a trial court, were to determine whether an arbitration provision were operative against a nonsignatory, a stranger to the agreement might be subjected to and be bound by an arbitration to which such stranger had not consented and would be without effective review.¿¿While a court will vacate an arbitration award if the arbitrators exceeded their powers, courts may not examine the¿sufficiency¿of the evidence supporting the award.¿[Citations.] [Fn. omitted.] Thus, if [the plaintiff] were to bring a motion to vacate the award asserting the arbitrator had exceeded his powers in ordering joinder due to insufficient evidence to support a finding that [the nonsignatory corporation] was the [signatories'] principal [and therefore subject to the arbitration agreement], the trial court, constrained by the limited grounds set forth in¿[Code of Civil Procedure] section 1286.2, would decline to review the arbitrator's factual finding." (American Builder's, 226 Cal.App.3d at 179–180.)

Here, there is no dispute that Hume Street is not a party to the Option Agreement, so this Court therefore cannot delegate the issue of arbitrability to the London arbitrator.

Stay of Proceedings

Because the Court denies the motion to compel, there is no basis for a stay pursuant to Code Civ. Proc. §1281.4. The Court may also not stay the proceedings pending the arbitration in London. "Section 1281.4 does not authorize the court to stay an action on the basis of an arbitration to which the plaintiff is not a party." (Leenay v. Superior Court (2022) 81 Cal.App.5th 553, 562.)

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
## Civil Division
West District, Beverly Hills Courthouse, Department 205

22SMCV02646                                                        April 28, 2023
HUME STREET MANAGEMENT CONSULTANTS LIMITED            8:30 AM
vs SHEIKH HAMAD BIN KHALIFA BIN HAMAD BIN
ABDULLAH BIN JASSIM BIN MOHAMMED AL THANI, et
al.

Judge: Honorable Edward B. Moreton, Jr.        CSR: Lisa Marie Parker, CSR#13441
Judicial Assistant: J. Fletes                  ERM: None
Courtroom Assistant: R. Salazar                Deputy Sheriff: None

CONCLUSION

Based on the foregoing, the Court GRANTS Defendant BHA and Plaintiff's motions to seal and
DENIES BHA's motion to compel arbitration and for stay of proceedings pending the
completion of arbitration.

********************END OF TENTATIVE********************

The tentative ruling is adopted as the order of the Court as to the Motions to Seal only.

The Motion to Seal Documents Filed In Support Of Reply In Support Of Motion To Compel
Arbitration And Stay Further Proceedings filed by Beverly Hills Acquisition LLC on 04/21/2023
is Granted.

The Motion to Seal Notice of Motion and Motion to Seal Plaintiffs' Opposition to Beverly Hills
Acquisition LLC's Motion to Compel Arbitration filed by Hume Street Management Consultants
Limited on 04/17/2023 is Granted.

The Motion to Seal Motion to Seal Documents Filed in Support of Motion to Compel Arbitration
filed by Beverly Hills Acquisition LLC on 02/28/2023 is Granted.

The Court takes the Hearing on Motion to Compel Arbitration under submission.

Clerk to give notice of ruling once it becomes available.

The Court issues a tentative ruling on specially appearing Defendant HBJ's Motion to Quash:

***********************TENTATIVE RULING********************

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
### Civil Division
West District, Beverly Hills Courthouse, Department 205

**22SMCV02646**
**HUME STREET MANAGEMENT CONSULTANTS LIMITED**
**vs SHEIKH HAMAD BIN KHALIFA BIN HAMAD BIN**
**ABDULLAH BIN JASSIM BIN MOHAMMED AL THANI, et**
**al.**

April 28, 2023
8:30 AM

Judge: Honorable Edward B. Moreton, Jr.       CSR: Lisa Marie Parker, CSR#13441
Judicial Assistant: J. Fletes                 ERM: None
Courtroom Assistant: R. Salazar               Deputy Sheriff: None

BACKGROUND

This action relates to a dispute over payment for services performed by Plaintiff Hume Street Management Consultants Limited at the Maybourne Beverly Hills hotel located in Los Angeles, California (the "Hotel"). Plaintiff alleges it is owed millions of dollars in fees for day-to-day management of the Hotel, overseeing and designing its redevelopment, and navigating the local government planning and permitting requirements for the redevelopment. (Compl. ¶5.)

The operative complaint alleges claims for (1) breach of contract, (2) account stated, (3) quantum meruit, (4) promissory estoppel, and (5) unjust enrichment.

Only the unjust enrichment claim is alleged against specially appearing Defendant Sheikh Hamad Bin Jassim Bin Jaber Bin Mohammed Bin Thani Al Thani ("HBJ"). Plaintiff alleges HBJ (together with other defendants) were unjustly enriched by inducing Plaintiff to redevelop and manage the Hotel, then refusing to pay any fees for Plaintiff's work or repay costs incurred by Plaintiff on HBJ's behalf. (Compl. ¶76.)

This hearing is on HBJ's motion to quash service of summons. HBJ argues that service is defective because the Complaint was left with a security guard who was not his agent for service of process, at a dwelling that is not his place of residence.

LEGAL STANDARD

"Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant."¿ (AO Alfa-Bank v. Yakovlev (2018) 21¿Cal.App.5th 189, 202.)¿ "To establish personal jurisdiction, compliance with statutory procedures for service of process is essential."¿ (Kremerman v. White (2021). 71 Cal.App.5th 358, 371.)¿

But the statutory requirements are to be liberally construed to uphold jurisdiction, rather than defeat it. (Pasadena Medi-Center Assocs. v. Sup.Ct. (Houts)¿(1973) 9 Cal.3d 773, 778 ("The provisions of this chapter should be liberally construed to effectuate service and uphold the jurisdiction of the court if actual notice has been received by the defendant,¿and in the last analysis the question of service should be resolved by considering each situation from a practical standpoint.")

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
**Civil Division**
West District, Beverly Hills Courthouse, Department 205

**22SMCV02646**                                                    April 28, 2023
**HUME STREET MANAGEMENT CONSULTANTS LIMITED**                        8:30 AM
**vs SHEIKH HAMAD BIN KHALIFA BIN HAMAD BIN**
**ABDULLAH BIN JASSIM BIN MOHAMMED AL THANI, et**
**al.**

Judge: Honorable Edward B. Moreton, Jr.        CSR: Lisa Marie Parker, CSR#13441
Judicial Assistant: J. Fletes                  ERM: None
Courtroom Assistant: R. Salazar                Deputy Sheriff: None

Defendant's knowledge of the action does not dispense with statutory requirements for service of summons.¿ (Kappel v. Bartlett (1988) 200 Cal.App.3d 1457, 1466.) However, as long as the defendant receives actual notice of the lawsuit,¿substantial compliance¿with the Code provisions governing service of summons will generally be held sufficient. (Summers v. McClanahan¿(2006) 140 Cal.App.4th 403, 410–411 (¿"It is well settled that strict compliance with statutes governing service of process is not required. Rather, in deciding whether service was valid, the statutory provisions regarding service of¿process should be liberally construed to effectuate service and uphold the jurisdiction of the court if actual notice has been received by the defendant.").)

"A defendant, on or before the last day of his or her time to plead or within any further time that the court may for good cause allow" may move "to quash service of summons on the ground of lack of jurisdiction of the court over him or her" that results from lack of proper service.¿ (Code of Civ. Proc. §418.10(a)(1).¿ A defendant has 30 days after the service of the summons to file a responsive pleading.¿ (Code Civ. Proc., §412.20(a)(3).)¿¿

"When a defendant challenges the court's personal jurisdiction on the ground of improper service of process 'the burden is on the plaintiff to prove the existence of jurisdiction by proving, inter alia, the facts requisite to an effective service.'" (Summers, 140 Cal.App.4th at 413.)¿

DISCUSSION

Personal Service

The Code authorizes service on an individual through personal service or substitute service. (Code Civ. Proc. §§ 415.20, 415.30.) Section 416.90¿authorizes personal service on a defendant "by delivering a copy of the summons and of the complaint … to a person authorized by him to receive service of process." In its comments on this provision, the Judicial Council stated: "If the process is delivered to an agent of defendant, such agent must be one who is¿authorized by law or appointment to receive service of process, and the agent of an individual for other purposes is not necessarily authorized to receive such process."

Here, Plaintiff claims to have served HBJ personally by leaving a copy of the summons and complaint with a "Ryan Doe" at a property located in Los Angeles, California (the "Property").

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
### Civil Division
West District, Beverly Hills Courthouse, Department 205

22SMCV02646                                                        April 28, 2023
HUME STREET MANAGEMENT CONSULTANTS LIMITED                          8:30 AM
vs SHEIKH HAMAD BIN KHALIFA BIN HAMAD BIN
ABDULLAH BIN JASSIM BIN MOHAMMED AL THANI, et
al.

Judge: Honorable Edward B. Moreton, Jr.          CSR: Lisa Marie Parker, CSR#13441
Judicial Assistant: J. Fletes                    ERM: None
Courtroom Assistant: R. Salazar                  Deputy Sheriff: None

"Ryan Doe" – whose real name is Ryan Smith – is a security guard at the Property who has never met with or spoken to HBJ and was never authorized to accept service on HBJ's behalf. (Smith Decl. ¶¶ 7, 9.) Contrary to the proof of service, Smith also never told the process server he was authorized to accept service of process on behalf of HBJ. (Smith Decl. ¶¶ 3, 20.) On these facts, the Court concludes there was no personal service.

Summers v. McClanahan is instructive. There, plaintiff produced a declaration claiming that the service was effected on defendant by leaving copies of the summons and complaint with defendant's alleged "authorized agent" in Los Angeles. (140 Cal.App.4th at 405.) However, the purported agent provided a sworn statement that although she was the defendant's "personal manager" at the time of the service, she had "never been authorized by [defendant] to accept service of process on her behalf" and had never "represented to anyone either expressly or impliedly that [she had] authority to accept service of process on defendant's behalf." (Id. at 414.) Thus, the Court held that plaintiff failed to establish that the defendant granted her personal manager authority to accept service of process and found that the trial court did not acquire jurisdiction over defendant. (Id. at 415.)

Likewise, in Lebel v. Mai (2012) 210 Cal.App.4th 1154, the appellate court affirmed the trial court's order granting defendant's motion to quash service where the defendant lived abroad and plaintiff attempted to serve the complaint on his mother living in California. (Id. at 1163-1164.) Plaintiff argued that the defendant held his mother out as his ostensible agent because he told plaintiff to mail her rent checks to his mother's California address and to contact his mother for any "emergencies and maintenance needs." (Id. at 1163.) The court rejected this argument, holding that the trial court "correctly concluded plaintiff failed to present sufficient evidence warranting a finding that [defendant's mother] was defendant's agent for service of process." (Id. at 1164.) The court reasoned that "[a]t best, plaintiff presented some evidence that [defendant's mother] was arguably a limited agent for defendant for the collection of rent and as an alternate contact person for maintenance issues at the rental unit, but no evidence [defendant's mother] was expressly or impliedly authorized to accept service of process on defendant's behalf." (Id.)

The facts here are even weaker than those in Summers and Lebel. Unlike there, here, there was no business or personal relationship between the security guard and HBJ (Smith Decl. ¶8), much less a relationship that was so close and personal that it was "'highly probable'" HBJ would receive actual notice of the service of process as a result of the service on Smith. (Summers, 140 Cal. App. 4th at 414.) Smith had never met or spoken to HBJ. (Smith Decl. ¶7). Indeed, he did

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
### Civil Division
West District, Beverly Hills Courthouse, Department 205

**22SMCV02646**                                                    April 28, 2023
**HUME STREET MANAGEMENT CONSULTANTS LIMITED**                      8:30 AM
**vs SHEIKH HAMAD BIN KHALIFA BIN HAMAD BIN**
**ABDULLAH BIN JASSIM BIN MOHAMMED AL THANI, et**
**al.**

Judge: Honorable Edward B. Moreton, Jr.        CSR: Lisa Marie Parker, CSR#13441
Judicial Assistant: J. Fletes                  ERM: None
Courtroom Assistant: R. Salazar                Deputy Sheriff: None

not even know HBJ's name prior to preparing his declaration. (Smith ¶6.)

Notwithstanding, Plaintiff argues that Smith had ostensible authority to accept service because the guard identified himself as "in charge" and blocked the entrance to the residence. Further, the guard telephoned a colleague after the process server informed him the papers were for HBJ, and he then indicated he was authorized to accept the papers. (Mikulasch Decl. ¶¶ 6-7.) The process server's declaration is in conflict with the guard's own declaration. The guard maintains he did not represent he was authorized to accept service. (Smith Decl. ¶3.) Because the evidence is in equipoise and Plaintiff bears the burden of showing proper service, Plaintiff loses.

Substitute Service

While the Code authorizes substitute service in lieu of personal service, certain conditions must be satisfied. "[A]n¿individual may be served by¿substitute service only after a good faith effort at¿personal service has first been made: the burden is on the plaintiff to show that the summons and complaint cannot with reasonable diligence be personally delivered to the individual defendant." (American Express Centurion Bank v. Zara¿(2011) 191 Cal.App.4th 383, 389¿(citations and internal quotation marks omitted).)

Plaintiff argues that personal delivery on HBJ cannot be made with reasonable diligence. HBJ is a former prime minister of Qatar and a high-ranking member of the Qatari royal family. His residence is heavily secured with layers of personnel that prevent outsiders from reaching the front door. (McKillen Decl. ¶7; Mikulasch Decl. ¶4.) When outside his home, HBJ is accompanied by one or more security guards, such that it would be difficult and even unwise for a stranger to try to serve him. (McKillen Decl. ¶7.) This blockade was demonstrated when HBJ's security stopped the process server from reaching the front door and discouraged him from returning, saying: "Don't bother. You'll never be able to serve that person." (Mikulasch Decl. ¶5.)

On these facts, the court concludes that personal delivery on HBJ cannot be made with reasonable diligence. In similar circumstances, courts have held that a single attempt at service can constitute reasonable diligence particularly when, as here, the defendant received actual notice. In Falco v. Nissan N. Am. Inc. (C.D. Cal. 2013) 987 F.Supp.2d 1071, 1080, the plaintiffs made a single unsuccessful attempt to personally serve the chairperson of Nissan North America at the company's U.S. headquarters before performing substitute service by mail. The court held

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
### Civil Division
West District, Beverly Hills Courthouse, Department 205

22SMCV02646                                                          April 28, 2023
HUME STREET MANAGEMENT CONSULTANTS LIMITED                            8:30 AM
vs SHEIKH HAMAD BIN KHALIFA BIN HAMAD BIN
ABDULLAH BIN JASSIM BIN MOHAMMED AL THANI, et
al.

Judge: Honorable Edward B. Moreton, Jr.        CSR: Lisa Marie Parker, CSR#13441
Judicial Assistant: J. Fletes                  ERM: None
Courtroom Assistant: R. Salazar                Deputy Sheriff: None

that the plaintiffs' single attempt at service satisfied the diligence requirement in light of the realties involved in attempting service on a high level executive. "[C]onsidering the relatively low likelihood that the chairperson of a corporation as large as Nissan-America would be made accessible to a process server," the court explained, "multiple attempts at personal service would likely have been futile." (Id.) The court also observed that "California courts have set forth no hard and fast rule requiring that Plaintiffs make three or any other number of attempts at personal service." (Id.)

As in Falco, multiple attempts at personal service here would have been futile. It would be dangerous for a process server to try to evade HBJ's security detail to personally serve him, and it would be futile to return to HBJ's Bel Air address multiple times given the extremely low likelihood that HBJ would be made accessible to a process server.

The Court next considers whether the Bel Air address is HBJ's "dwelling house" or "usual place of abode." One method of effecting substitute service is to leave a copy of the summons and complaint with a competent adult at the defendant's "dwelling house" or "usual place of abode." (Code Civ. Proc. §425.20(b).) Here, HBJ has described the Bel Air mansion as "my home". (Ex. G to Kramer Decl.) Further, according to public records, the Bel Air mansion was purchased by an entity affiliated with HBJ. (Kramer Decl. ¶¶2-4; Ex. A-C). Additional facts support a finding that the Bel Air mansion is HBJ's "dwelling house": the mansion has custom designed living quarters for HBJ and his wife; HBJ worked for many years to design the estate with a world-renowned architect and designer; the home is furnished and decorated to HBJ's personal tastes including with his personal art collection; HBJ expressed interest in purchasing neighboring lots for his children, to create a large family compound; and HBJ sought out help to identify household staff for his Bel Air residence and to install outdoor heaters on the property. (McKillen Decl. ¶¶3-6.)

Together, these facts support a finding that the Bel Air mansion is HBJ's dwelling house, even though he may only have spent limited time at the property. The terms "dwelling house" and "usual place of abode" take their meaning from the Federal Rules, and California courts often look to federal authorities to interpret their meaning. (Zirbes v. Stratton (1986) 187 Cal.App.3d 1407, 1416, 1417-18.)

Nat'l Dev. Co. v. Triad Holding Corp. (2nd Cir. 1991) 930 F.2d 253, 257, is instructive. There, the defendant described as a "wealthy man and a frequent intercontinental traveler, argued his

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
### Civil Division
West District, Beverly Hills Courthouse, Department 205

**22SMCV02646**                                                    April 28, 2023
**HUME STREET MANAGEMENT CONSULTANTS LIMITED**                      8:30 AM
**vs SHEIKH HAMAD BIN KHALIFA BIN HAMAD BIN**
**ABDULLAH BIN JASSIM BIN MOHAMMED AL THANI, et**
**al.**

Judge: Honorable Edward B. Moreton, Jr.      CSR: Lisa Marie Parker, CSR#13441
Judicial Assistant: J. Fletes                ERM: None
Courtroom Assistant: R. Salazar              Deputy Sheriff: None

---

condo in New York was not his "usual place of abode" because he was a citizen of Saudi Arabia, considered his compound in Riyadh to be his domicile, had spent only 34 days in New York in the preceding year, and the New York condo "was only one of twelve locations around the world where he spen[t] his time". (Id.) The court rejected the argument, noting that the New York condo had "sufficient indicia of permanence" including that the defendant owned the apartment (through two layers of entities), furnished it, and spent considerable amount of money remodeling it to his personal tastes. (Id.; see also Reynolds Corp. v. Nat'l Operator Servs, Inc. (W.D.N.Y. 2002) 208 F.R.D. 50, 53 (San Francisco residence where defendants spent "three days per month" was proper place for service by mail under California law despite affidavits from the defendants stating they did not receive mail at the residence and that their primary residence was in Florida); 131 Main Street Assocs v. Manko (S.D.N.Y. 1995) 897 F.Supp. 1507, 1524 (New York penthouse was defendant's "dwelling place" or "usual place of abode" even though his stays were "episodic rather than constant;" he did not own or pay rent for the apartment, and he maintained a separate long time residence in Florida).)

The frequency of HBJ's presence at the Bel Air mansion compares to the defendants in Triad Holding and Reynolds who occupied their part-time homes on a limited basis. And like the defendant in Triad Holding, HBJ has spent considerable money customizing the property.

HBJ's cited authorities are inapposite as each involved service at addresses where the defendants did not stay or reside—even on an episodic or part-time basis. (See Kremerman v. White (2021) 71 Cal.App.5th 358, 365, 373 (plaintiff left summons and complaint with an employee at private mailbox, rather than a residence); Lebel v. Mai (2012) 210 Cal.App.4th 1154, 1158 (attempted service at the house of defendant's mother without evidence that defendant stayed there); Zirbes, 187 Cal.App.3d at 1417 (attempted service at the home of defendant's parents where she did not stay); Corcoran v. Arouh (1994) 24 Cal.App.4th 310, 315 (attempted service at address of defendant's business colleague without evidence that defendant stayed there himself).)

The Court next considers whether the security guard was a competent member of HBJ's household. In Bein v. Brechtel-Jochim Group (1992) 6 Cal.App.4th 1387, 1393, the Court of Appeal upheld substitute service on a security guard who denied access to the defendant's residence in a gated community, concluding that the guard "must be considered a competent member of the household." The court explained: "Litigants have the right to choose their abodes; they do not have the right to control who may sue or serve them by denying them physical access." (Id.; see also Hupp v. Freedom Communications, Inc. (2013) 221 Cal.App.4th 398, 406

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
### Civil Division
West District, Beverly Hills Courthouse, Department 205

22SMCV02646
HUME STREET MANAGEMENT CONSULTANTS LIMITED
vs SHEIKH HAMAD BIN KHALIFA BIN HAMAD BIN
ABDULLAH BIN JASSIM BIN MOHAMMED AL THANI, et
al.

April 28, 2023
8:30 AM

Judge: Honorable Edward B. Moreton, Jr.
Judicial Assistant: J. Fletes
Courtroom Assistant: R. Salazar

CSR: Lisa Marie Parker, CSR#13441
ERM: None
Deputy Sheriff: None

---

(citing Bein for the proposition that "leaving copies of the papers with the security guard at the front of the gated community" was a "permissible means of service").) Similarly, in Khourie, Crew & Jaeger v. Sabek, Inc. (1990) 220 Cal.App.3d 1009, 1012, the Court of Appeal held substitute service was proper where the process server left the summons and complaint outside a locked door because defendant's employee refused to unlock the door and told the server she would not accept service. The court explained: "It is established that a defendant will not be permitted to defeat service by rendering physical service impossible." Under Bein and Khourie, Plaintiff's service on HBJ's security guard clearly met the requirement of leaving the summons and complaint with a competent member of HBJ's household.

The final step of substitute service is to mail a copy of the summons and complaint by first class mail to the place they were previously left. (Code Civ. Proc. §415.20(b).) There is no deadline or timing requirement for the follow-on mailing. Here, Plaintiff sent a copy of the summons and complaint by first class mail to the Bel Air mansion, perfecting substitute service. (Kramer Decl. ¶6; Ex. D.)

Mail Service

Even if HBJ were treated as a pure foreign resident with no residence in California, he has been properly served by mail at his foreign residence in Doha, Qatar. Because Qatar is not a signatory to the Hague Service Convention, HBJ can be served there by "any method conforming to California law and consistent with due process." (Standard Microsystems Corp v. Winbond Elecs. Corp. (2009) 179 Cal.App.4th 868, 897.) One such method is service by mail under Code Civ. Proc. §415.40 which states: "A summons may be served on a person outside this state … by sending a copy of the summons and of the complaint to the person to be served by first class mail, postage prepaid, requiring a return receipt." California courts allow service by mail for defendants in countries that are not signatories to the Hague Convention. (See, e.g., Standard Microsystems, 179 Cal.App.4th at 897 (service by mail pursuant to Code Civ. Proc. §415.40 was proper on a defendant in Taiwan which is not a signatory to the Hague Convention).)

Here, Plaintiff mailed the summons and complaint to a PO Box associated with HBJ in public records: Al Wajiba Palace, Al Wajiba Dukhan Road, PO Box 4044, Doha Qatar. (Kramer Decl. ¶7, Ex. E.) The package was sent by first class mail with postage prepaid and a return receipt requested. Service through this mailing became effective on April 3, 2023 (the tenth day after mailing). (Code Civ. Proc. §415.40.)

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
## Civil Division
West District, Beverly Hills Courthouse, Department 205

**22SMCV02646**
**HUME STREET MANAGEMENT CONSULTANTS LIMITED**
**vs SHEIKH HAMAD BIN KHALIFA BIN HAMAD BIN**
**ABDULLAH BIN JASSIM BIN MOHAMMED AL THANI, et**
**al.**

April 28, 2023
8:30 AM

Judge: Honorable Edward B. Moreton, Jr.
Judicial Assistant: J. Fletes
Courtroom Assistant: R. Salazar

CSR: Lisa Marie Parker, CSR#13441
ERM: None
Deputy Sheriff: None

In sum, the Court concludes the service of process was proper and denies the motion to quash.

CONCLUSION

Based on the foregoing, the Court DENIES specially appearing Defendant HBJ's motion to
quash service of summons.

IT IS SO ORDERED.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*END OF TENTATIVE\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Motion is heard, argued and the Court rules as follows:

The tentative ruling is adopted as the order of the Court, which is incorporated herein.

The Motion to Quash Service of Summons filed by Sheikh Hamad bin Jassim bin Jaber bin
Mohammed bin Thani Al Thani on 02/28/2023 is Denied.

The Court issues a tentative ruling on SPECIALLY APPEARING DEFENDANTS BEVERLY
HILLS MEZZANINE LLC AND COROIN BEVERLY HILLS PROPERTIES, INC.'S
MOTIONS TO QUASH SERVICE OF SUMMONS:

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*TENTATIVE RULING\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

BACKGROUND

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
### Civil Division
West District, Beverly Hills Courthouse, Department 205

**22SMCV02646**
**HUME STREET MANAGEMENT CONSULTANTS LIMITED**
**vs SHEIKH HAMAD BIN KHALIFA BIN HAMAD BIN**
**ABDULLAH BIN JASSIM BIN MOHAMMED AL THANI, et**
**al.**

April 28, 2023
8:30 AM

| | |
|---|---|
| Judge: Honorable Edward B. Moreton, Jr. | CSR: Lisa Marie Parker, CSR#13441 |
| Judicial Assistant: J. Fletes | ERM: None |
| Courtroom Assistant: R. Salazar | Deputy Sheriff: None |

This action relates to a dispute over payment for services performed by Plaintiff Hume Street Management Consultants Limited at the Maybourne Beverly Hills hotel located in Los Angeles, California (the "Hotel"). Plaintiff alleges it is owed millions of dollars in fees for day-to-day management of the Hotel, overseeing and designing its redevelopment, and navigating the local government planning and permitting requirements for the redevelopment. (Compl. ¶5.)

The operative complaint alleges claims for (1) breach of contract, (2) account stated, (3) quantum meruit, (4) promissory estoppel, and (5) unjust enrichment.

As relevant here, Plaintiff alleges that specially appearing Defendant Coroin Beverly Hills Properties, Inc. ("Coroin") owns specially appearing Defendant Beverly Hills Mezzanine LLC ("BHM") which owns Defendant Beverly Hills Acquisition LLC ("BHA") which in turn owns the Hotel. (Compl. 17-18.) Plaintiff also alleges that BHM and Coroin are the alter egos of Defendant Sheikh Hamad bin Khalifa bin Hamad bin Abdullah bin Jassin bin Mohammed Al Thani ("Father Emir"), who holds ownership interests in Defendant Maybourne Hotels Limited which manages the Hotel and receives a portion of its revenues. (Compl. ¶ 23.)

This hearing is on BHM and Coroin's motion to quash service of process for lack of personal jurisdiction. BHM and Coroin argue that they are not subject to general jurisdiction because they are not "at home" in California, and the Court cannot exercise specific jurisdiction because (1) they have not purposefully availed themselves of the benefits of conducting business within California; (2) they have no contacts with California upon which Plaintiff can base any claims, and (3) exercising specific jurisdiction would offend traditional notions of fair play and substantial justice. Plaintiff does not oppose the motion except in so far as it seeks an order that (1) conclusively establishes the Court has no personal jurisdiction over BHM and Coroin and (2) dismisses BHM and Coroin with prejudice.

LEGAL STANDARD

Code Civ. Proc. §418.10(a)(1) provides that a defendant may move "[t]o quash service of summons on the ground of lack of jurisdiction of the court over him or her." Although the defendant is the moving party, the burden of proof is on the plaintiff to demonstrate sufficient minimum contacts exist. (Milhon v. Superior Court (1985) 169 Cal.App.3d 703, 710 ("[W]hen jurisdiction is challenged by a nonresident defendant, the burden of proof is upon the plaintiff to demonstrate that 'minimum contacts' exists between defendant and the forum state to justify

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
### Civil Division
West District, Beverly Hills Courthouse, Department 205

**22SMCV02646**
**HUME STREET MANAGEMENT CONSULTANTS LIMITED**
**vs SHEIKH HAMAD BIN KHALIFA BIN HAMAD BIN**
**ABDULLAH BIN JASSIM BIN MOHAMMED AL THANI, et**
**al.**

April 28, 2023
8:30 AM

Judge: Honorable Edward B. Moreton, Jr.
Judicial Assistant: J. Fletes
Courtroom Assistant: R. Salazar

CSR: Lisa Marie Parker, CSR#13441
ERM: None
Deputy Sheriff: None

imposition of personal jurisdiction.").) If the plaintiff is able to meet its burden, the burden then shifts to the defendant to demonstrate the exercise of jurisdiction would be unreasonable. (Buchanan v. Soto (2015) 241 Cal.App.4th 1353, 1362.)¿


DISCUSSION

General Jurisdiction

There are two kinds of personal jurisdiction, general and specific. General jurisdiction over a corporation exists when that corporation might be "fairly regarded as at home" in that state. (Brue v. Shabaab (2020) 54 Cal.App.5th 578, 590.) Traditionally, a corporation or limited liability company is "at home" in its place of incorporation and its principal place of business. (Id.; James Malinchak Int'l, Inc. v. Suzanne Evans Coaching, LLC, 2016 U.S. Dist. LEXIS 135825 at *5.) "But in an exceptional case, a corporation's operations in a forum other than its formal place of incorporation or principal place of business may be so substantial and of such a nature as to render the corporation at home in that state."¿(Brue, 54 Cal.App.5th at 590.) To test that possibility, courts look to a variety of factors, including "maintenance of offices, the presence of employees, use of bank accounts and¿marketing or selling products¿in the forum state, to analyze whether a corporation's contacts render it effectively at home in that state." (Id. at 590-591.)

Here, BHM was formed under the laws of Delaware and it is a holding company with no principal place of business. (Clot Decl. ¶¶2-3.) Its listed business address is in Luxembourg. (Id. at ¶3.) BHM has no employees. (Id. at ¶4.) It does not maintain offices in California. (Id. at ¶11.) It owns no real property in California. (Id. at ¶10.) Its sole member is a Delaware corporation. (Id. at ¶4.) It does not provide services in California, nor does it provide services to California residents. (Id. at ¶12.) Its only activity is its passive investment in Defendant BHA. (Id. at ¶4.)

Likewise, Coroin is incorporated in Delaware and is a holding company with no principal place of business. (Clot Decl. ¶¶2-3.) Its listed business address is in Luxembourg. (Id. at ¶3.) It has no employees in California. (Id. at ¶4.) It does not maintain any offices in California. (Id. at ¶11.) It owns no real property in California. (Id. at ¶10.) It does not provide services in California, nor does it provide services to California residents. (Id. at ¶12.) Its only activity is its passive

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
### Civil Division
West District, Beverly Hills Courthouse, Department 205

22SMCV02646                                                        April 28, 2023
HUME STREET MANAGEMENT CONSULTANTS LIMITED                          8:30 AM
vs SHEIKH HAMAD BIN KHALIFA BIN HAMAD BIN
ABDULLAH BIN JASSIM BIN MOHAMMED AL THANI, et
al.

Judge: Honorable Edward B. Moreton, Jr.          CSR: Lisa Marie Parker, CSR#13441
Judicial Assistant: J. Fletes                    ERM: None
Courtroom Assistant: R. Salazar                  Deputy Sheriff: None

investment in its subsidiaries including BHM. (Id. at ¶4.)

On these facts, the Court concludes there is no general jurisdiction over either BHM or Coroin.
They have no contacts with the State that can be characterized as systematic or continuous
sufficient to conclude they are "at home" in California. Their sole contact with the State, a
passive investment in the entity that owns the Hotel, cannot give rise to general jurisdiction. (In
re Automobile Antitrust Cases I & II (2005) 135 Cal. App. 4th 100, 121 ("General jurisdiction
will not lie when the parent is a true holding company, the business of which is not operations
but¿passive investment in a subsidiary company.¿ Investment alone is not a sufficient ground to
exercise general jurisdiction, even if the foreign corporation could have chosen to simply run the
local business itself. To hold otherwise would ignore federal constitutional law.")

Plaintiff's alter ego allegations do not create general jurisdiction. Plaintiff alleges that BHM and
Coroin are alter egos of Father Emir, a Qatari national. (Compl. ¶23.) Plaintiff does not allege
that BHM and Coroin are the alter egos of BHA, the only California entity in the case. Nor could
it.

The courts have recognized that¿if a state may exercise jurisdiction over a
subsidiary¿corporation, it may also have jurisdiction over the¿parent corporation if the¿elements
of alter ego or principal/agent theories are present. (Sonora Diamond Corp. v. Superior Court
(2000) 83 Cal. App. 4th 523, 536-537.) When the¿elements of alter ego are present, the ordinary
rule that treats a corporation as separate from its shareholders is disregarded; the court will deem
the corporation's acts as the acts of those persons who own and control the entity, and the
jurisdiction over the corporation is passed through to its shareholders.¿ (Id.¿at 538-539.) Under
the principal/agent theory, if the forum may assert jurisdiction over the subsidiary, the forum
may extend its jurisdiction to the parent if the parent exerts a sufficiently high degree of control
over its subsidiary to reasonably deem the subsidiary the agent of the parent under traditional
agency principles. (Id.¿at pp. 540-541.)

The assertion of jurisdiction under either theory requires a fact-specific examination of numerous
elements.¿¿The two principal questions to establish alter ego are whether there is "such a unity
of interest and ownership between the corporation and its equitable owner that the separate
personalities of the corporation and the shareholder do not in reality exist" and whether there
would be "an inequitable result if the acts in question are¿treated as those of the corporation
alone." (Id. at 538.) The courts consider numerous factors, including inadequate capitalization,

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
### Civil Division
West District, Beverly Hills Courthouse, Department 205

22SMCV02646                                                                        April 28, 2023
HUME STREET MANAGEMENT CONSULTANTS LIMITED                                           8:30 AM
vs SHEIKH HAMAD BIN KHALIFA BIN HAMAD BIN
ABDULLAH BIN JASSIM BIN MOHAMMED AL THANI, et
al.

Judge: Honorable Edward B. Moreton, Jr.          CSR: Lisa Marie Parker, CSR#13441
Judicial Assistant: J. Fletes                    ERM: None
Courtroom Assistant: R. Salazar                  Deputy Sheriff: None

commingling of funds and other assets of the two entities, the holding out by one entity that it is
liable for the debts of the other, identical equitable ownership in the two entities, use of the same
offices and employees, use of one as a mere conduit for the affairs of the other, disregard of
corporate formalities, lack of segregation of corporate records, and identical directors and
officers.¿(See¿Tomaselli v. Transamerica Ins. Co.¿(1994) 25 Cal. App. 4th 1269, 1285.) No
single factor is determinative, and instead a court must examine all the circumstances to
determine whether to apply the doctrine. (Talbot v. Fresno-Pacific Corp.¿(1960) 181 Cal. App.
2d 425, 432.) Moreover, even if the unity of interest and ownership element is shown, alter ego
will not be applied absent evidence that an injustice would result from the recognition of separate
corporate identities, and "[d]ifficulty in enforcing a judgment or collecting a debt does not satisfy
this standard." (Sonora Diamond Corp. v. Superior Court, supra,¿83 Cal. App. 4th at 539.)

Similarly,¿the principal/agent theory is a fact-driven inquiry that requires examination of
whether the parent exercises a sufficient degree of control over its subsidiary to establish that the
subsidiary can be described as a means through¿which the parent acts, or is nothing more than an
incorporated department of the parent. Under those circumstances, the subsidiary will be deemed
to be the agent of the parent in the forum state and jurisdiction will extend to the parent. (Sonora
Diamond Corp. v. Superior Court, supra,¿83 Cal. App. 4th at 541.)¿ It is the nature of the control
exercised by the parent over the subsidiary that is crucial, because some degree of control is an
ordinary and necessary incident of the parent's ownership¿of the subsidiary. Only when the
degree of control exceeds this level and reflects the parent's purposeful disregard of the
subsidiary's independent corporate existence that the principal/agent theory will be invoked. "As
a practical matter, the parent must be shown to have moved beyond the establishment of general
policy and direction for the subsidiary and in effect taken over performance of the
subsidiary's¿day-to-day¿operations in carrying out that policy." (Id.¿at 541-542, original italics.)

Here, the facts do not support a finding of either alter ego or a principal/agent theory. While
BHM is the sole member of BHA, it observes all corporate formalities with respect to BHA.
(Clot Decl. ¶6.) BHM only has a passive investment in BHA, which means it is not involved in
the day to day operations of BHA. (Clot Decl. ¶4.) Similarly, Coroin observes all corporate
formalities with respect to BHM and BHM's subsidiary, BHA. (Clot Decl. ¶5.) There is no
evidence that Coroin or BHM dominates the day-to-day operations of BHA. Indeed, neither has
any employees who could oversee the day-to-day operations. (Clot Decl. ¶4.) There is nothing in
the record which establishes that the degree of supervision or control exercised by BHM or
Coroin over BHA went beyond that usually found in a parent-subsidiary relationship. Further,

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
## Civil Division
West District, Beverly Hills Courthouse, Department 205

22SMCV02646
HUME STREET MANAGEMENT CONSULTANTS LIMITED
vs SHEIKH HAMAD BIN KHALIFA BIN HAMAD BIN
ABDULLAH BIN JASSIM BIN MOHAMMED AL THANI, et
al.

April 28, 2023
8:30 AM

Judge: Honorable Edward B. Moreton, Jr.          CSR: Lisa Marie Parker, CSR#13441
Judicial Assistant: J. Fletes                    ERM: None
Courtroom Assistant: R. Salazar                  Deputy Sheriff: None

BHA is adequately capitalized to meet all of its financial obligations. (Clot Decl. ¶7.)

In sum, the Court concludes it does not have general jurisdiction over either Coroin or BHM.

Specific Jurisdiction

For specific jurisdiction, "courts consider the relationship among the defendant, the forum and the litigation." (Snowney v. Harrah's Entertainment, Inc. (2005) 35 Cal.4th 1054, 1062.) A court may exercise specific jurisdiction over a nonresident defendant only if: "(1) the defendant has purposefully availed himself or herself of forum benefits; (2) the controversy is related to or arises out of the defendant's contacts with the forum, and (3) the assertion of personal jurisdiction would comport with fair play and substantial justice." (Id.)

Here, the only actual contact BHM has with California is that it is the parent of an LLC that owns a hotel in California. Likewise, the only actual contact Coroin has with California is that it is the parent of BHM who in turn is the parent of an LLC that owns the Hotel. These facts are insufficient to demonstrate "purposeful availment" sufficient to support specific jurisdiction over either BHM or Coroin.

It is a "firm proposition that neither ownership nor control of a subsidiary corporation by a foreign parent corporation" on its own can subject a parent to jurisdiction. (Sonora Diamond, 83 Cal.App.4th at 540.) Rather, only where a parent exercises substantial control in connection with the controversy is specific jurisdiction found. (Id. at 554 (there is purposeful availment "only if the parent's acts are connected or related to the cause of action on which jurisdiction is sought").) ¿The question is whether "the parent for all intents and purposes has done an act in the forum state of a nature as to make reasonable the forum state's exercise of jurisdiction over the parent with respect to that act and its consequences." (Id.)¿

Here, the only act attributed to BHM or Coroin is their passive investment in a company that owns the Hotel. But passive investment alone cannot create purposeful availment. (HealthMarkets, Inc. v. Superior Court (2009) 171 Cal. App. 4th 1160, 1169 ("Ownership of a subsidiary alone does not constitute purposeful availment.¿Rather, purposeful availment requires some manner of deliberately directing the subsidiary's activities in, or having a substantial connection with, the forum state.")

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
## Civil Division
West District, Beverly Hills Courthouse, Department 205

22SMCV02646                                                         April 28, 2023
HUME STREET MANAGEMENT CONSULTANTS LIMITED                           8:30 AM
vs SHEIKH HAMAD BIN KHALIFA BIN HAMAD BIN
ABDULLAH BIN JASSIM BIN MOHAMMED AL THANI, et
al.

Judge: Honorable Edward B. Moreton, Jr.        CSR: Lisa Marie Parker, CSR#13441
Judicial Assistant: J. Fletes                  ERM: None
Courtroom Assistant: R. Salazar                Deputy Sheriff: None

The second requirement for specific jurisdiction is also not met. Plaintiff's causes of action do not "arise out of" or "relate to" BHM or Coroin's contacts with California. When a complaint includes a parent company, the parent company's contacts—not just the subsidiary's contacts—must relate to the causes of action. (In re Auto Antitrust Cases I&II, 135 Cal.App.4th at 116 ("If the operative facts of the allegations of the complaint do not relate to the parent manufacturers' contacts in this state, then the cause of action does not arise from that contact such that California courts may exercise specific jurisdiction.").) Here, the only contact BHM and Coroin have with California is their passive investment in BHA who owns the Hotel. But this lawsuit does not relate to the passive investment itself, but rather relates to services performed on the Hotel for which Plaintiff seeks reimbursement.

Because the first and second requirement for specific jurisdiction are not met, the Court will not go on to consider the third requirement.

CONCLUSION

Based on the foregoing, the Court GRANTS specially appearing Defendants BHM and Coroin's motions to quash service of summons for lack of personal jurisdiction. Defendants BHM and Coroin are dismissed without prejudice.

*****************END OF TENTATIVE*****************

Motions are heard, and the Court rules as follows:

The tentative ruling is adopted as the order of the Court, which is incorporated herein.

The Motion to Quash Service of Summons filed by Beverly Hills Mezzanine LLC on 02/28/2023 is Granted.

The Motion to Quash Service of Summons filed by Coroin Beverly Hills Properties Inc. on 02/28/2023 is Granted.

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
## Civil Division
West District, Beverly Hills Courthouse, Department 205

**22SMCV02646**                                          April 28, 2023
**HUME STREET MANAGEMENT CONSULTANTS LIMITED**                  8:30 AM
**vs SHEIKH HAMAD BIN KHALIFA BIN HAMAD BIN**
**ABDULLAH BIN JASSIM BIN MOHAMMED AL THANI, et**
**al.**

Judge: Honorable Edward B. Moreton, Jr.          CSR: Lisa Marie Parker, CSR#13441
Judicial Assistant: J. Fletes                    ERM: None
Courtroom Assistant: R. Salazar                  Deputy Sheriff: None

Clerk to give notice of Motion to Compel Arbitration taken under submission once the ruling becomes available.